IN THE MATTER OF T.H.T.

No. 469A07

(Filed 27 August 2008)

**Child Abuse and Neglect; Mandamus— failure to timely enter order of adjudication and disposition—new hearing an improper remedy**

The Court of Appeals did not err by concluding that respondent mother was not entitled to a new trial in a child custody and child abuse and neglect case even though the trial court failed to timely enter the order of adjudication and disposition in violation of the time lines set forth in N.C.G.S. §§ 7B-807(b) and 7B-905(a) and failed to hold a hearing pursuant to N.C.G.S. § 7B-807(b) to determine the cause of delay in entry of the order of adjudication and disposition, because: (1) in appeals from adjudicatory and dispositional orders in which the alleged error is the trial court's failure to adhere to statutory deadlines, such error arises subsequent to the hearing and therefore does not affect the integrity of the hearing itself; and (2) when the integrity of the trial court's decision is not in question, a new hearing serves no purpose but only compounds the delay in obtaining permanence for the child. When a trial court fails to enter an order of adjudication and disposition within thirty days after the hearing, a party should file a request with the clerk of court pursuant to N.C.G.S. § 7B-807(b) asking the trial court to enter its order or calendar a hearing to determine and explain the reason for the delay. If the trial court refuses or neglects to enter an order or to calendar a hearing, or fails to enter its order within ten days following the § 7B-807(b) hearing, a party may petition the Court of Appeals for a writ of mandamus.

Chief Justice PARKER concurs in the result only.

**IN RE T.H.T.**

[362 N.C. 446 (2008)].

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 185 N.C. App. 337, 648 S.E.2d 519 (2007), affirming an order entered 3 November 2006 by Judge J. Henry Banks in District Court, Vance County. Heard in the Supreme Court 18 March 2008.

*Carolyn J. Yancey for petitioner-appellee Vance County Department of Social Services.*

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Tobias S. Hampson, for respondent-appellant mother.*

TIMMONS-GOODSON, Justice.

To ensure placement and permanence for children "within a reasonable amount of time," the Juvenile Code provides clear and unambiguous time limits for entry of orders of adjudication and disposition, permanency planning orders, and orders terminating parental rights. N.C.G.S. § 7B-100(5) (2007). Increasingly, appeals from orders of adjudication and disposition, permanency planning orders, and orders terminating parental rights cite as grounds for reversal the failure of district courts to timely enter the orders. These appeals have come from all districts and counties within our state, with delays ranging from several weeks to almost a year. This systemic failure by district courts to adhere to statutory time limits results in prolonged periods of instability for all parties involved. Such instability and uncertainty are particularly devastating to children, who experience time differently from adults. Today we determine that the appropriate remedy for such failures—the remedy best suited to enforce statutory time limits and thus best ensure that North Carolina children receive the resolution they need and deserve and that the statutes demand—is mandamus. Accordingly, to the extent the Court of Appeals determined that the failure by the trial court to adhere to the statutory time limit did not require a new hearing to remedy the error, we affirm the Court of Appeals.

## BACKGROUND

Respondent is the mother of T.H.T. After respondent and her husband permanently separated on 26 July 2005, they shared custody of their daughter, T.H.T., through an informal custodial agreement. On approximately 16 October 2005, seven-month-old T.H.T. suffered a closed head injury while in respondent's care. The child's father thereafter filed a custody action in the district court in Vance County

seeking sole custody of T.H.T. The Department of Social Services in Vance County (DSS) also filed a juvenile petition on 2 February 2006, alleging that T.H.T. was abused and neglected. The trial court conducted a hearing on the juvenile petition on several days between 5 April 2006 and 26 July 2006. At the conclusion of the hearing, the trial court determined that T.H.T. was an abused and neglected juvenile and awarded legal and physical custody of T.H.T. to her father. The trial court awarded respondent unsupervised visitation privileges at specific times on most weekends. The trial court relieved DSS and the guardian ad litem of any further involvement in the case. The trial court, however, did not enter a written order reflecting its adjudication and disposition of T.H.T.'s case until 3 November 2006, nor did it hold a hearing pursuant to N.C.G.S. § 7B-807 to determine the cause of delay in entry of the order.

Respondent appealed from the adjudication and disposition order to the North Carolina Court of Appeals, which, in a divided opinion, affirmed the order of the trial court. *In re T.H.T.*, 185 N.C. App. 337, 648 S.E.2d 519 (2007). The dissenting judge concluded that the trial court's three-month delay in entering the order, coupled with the court's subsequent failure to hold a hearing to determine the cause of the delay, prejudiced respondent and warranted reversal of the order. *See id.* at 356, 648 S.E.2d at 531 (Tyson, J., dissenting). Respondent appeals to this Court on the basis of the dissent.

## ANALYSIS

Respondent argues the trial court committed reversible error by failing to timely enter the order of adjudication and disposition in violation of the time lines set forth in N.C.G.S. §§ 7B-807(b) and 7B-905(a) and by failing to hold a hearing pursuant to N.C.G.S. § 7B-807(b) to determine the cause of delay in entry of the order of adjudication and disposition. Respondent correctly notes that there is no dispute that the trial court committed error in violating N.C.G.S. §§ 7B-807 and 7B-905. Thus, the dispositive issue before this Court is identification of the proper remedy. In order to determine whether the trial court's order should be reversed, as asserted by respondent, we first examine the relevant statutes at issue and their purposes as stated in the North Carolina Juvenile Code.

### The North Carolina Juvenile Code

The North Carolina Juvenile Code "stresses the paramount importance of the child's best interest and the need to place children in safe, permanent homes within a reasonable time." *In re R.T.W.*, 359

N.C. 539, 549, 614 S.E.2d 489, 496 (2005), *superseded by statute on other grounds*, Act of Aug. 23, 2005, ch. 398, sec. 12, 2005 N.C. Sess. Laws 1455, 1460-61, *as recognized in In re T.R.P.*, 360 N.C. 588, 592, 636 S.E.2d 787, 791 (2006). The Juvenile Code sets out various time lines related to the hearing of juvenile cases, consistent with the Adoption and Safe Families Act of 1997,[1] to ensure that "when it is not in the juvenile's best interest to be returned home, the juvenile will be placed in a safe, permanent home within a reasonable amount of time." N.C.G.S. § 7B-100(5). The two statutes specifically at issue here are N.C.G.S. §§ 7B-807 and 7B-905. Section 7B-807(b) states that an order of adjudication "shall be reduced to writing, signed, and entered no later than 30 days following the completion of the hearing." *Id.* Section 7B-905(a) imposes an identical thirty-day deadline for the entry of an order of disposition. *Id.* In 2005 the General Assembly amended section 7B-807 to provide:

> If the [adjudicatory] order is not entered within 30 days following completion of the hearing, the clerk of court for juvenile matters shall schedule a subsequent hearing at the first session of court scheduled for the hearing of juvenile matters following the 30-day period to determine and explain the reason for the delay and to obtain any needed clarification as to the contents of the order. The order shall be entered within 10 days of the subsequent hearing required by this subsection.

*Id.* The General Assembly's purpose, as indicated in the title of the act, was to "Amend the Juvenile Code to Expedite Outcomes for Children and Families Involved In Welfare Cases and Appeals." Act of Aug. 23, 2005, ch. 398, 2005 N.C. Sess. Laws 1455. Although not directly at issue here, we note that the General Assembly added identical language to N.C.G.S. § 7B-907(c), *see id.*, sec. 7, at 1458, per-

---

1. The Adoption and Safe Families Act of 1997, Pub. L. No. 105-89, provides that the best interests of the juvenile are of paramount consideration by the court and when it is not in the juvenile's best interest to be returned home, the juvenile will be placed in a safe, permanent home within a reasonable amount of time. *See* 42 U.S.C. §§ 670-675 (2000). The Act shortened the time frames for court hearings and permanent placement in order to minimize the amount of time that children spend in foster care. Its purpose is to free more children for adoption while simultaneously requiring that the process move quickly, so as to move toward permanency for these children. *See id; see also* the Strengthening Abuse and Neglect Courts Act of 2000, Pub. L. No. 106-314 (reinforcing the Adoption and Safe Families Act). Congress requires state agencies to follow the provisions and regulations of the Act in order to receive federal funds. *See* Michael T. Dolce, *A Better Day for Children: A Study of Florida's Dependency System with Legislative Recommendations*, 25 Nova L. Rev. 547, 555-60 (2001) [hereinafter Dolce, *A Better Day*] (discussing the requirements set by the Adoption and Safe Families Act to receive federal funding).

taining to permanency planning orders, and to N.C.G.S. §§ 7B-1109(e) and 7B-1110(a), pertaining to orders terminating parental rights, *see id.*, secs. 16, 17, at 1462-63. The statutory time limits recognize the critical function of timely entry of orders in cases affecting the welfare of children and are consistent with the Juvenile Code's overarching purpose of achieving safe, permanent homes for children within a reasonable amount of time. *See* N.C.G.S. § 7B-100(5).

### The impact of delay

The importance of timely resolution of cases involving the welfare of children cannot be overstated. A child's perception of time differs from that of an adult. *See* Joseph Goldstein *et al.*, *The Best Interests of the Child: The Least Detrimental Alternative* 9 (1996) (explaining that a child's sense of time results in high sensitivity to the length of separation from a primary caregiver). As one commentator observed, "The legal system views [child welfare] cases as numbers on a docket. However, to a child, waiting for a resolution seems like forever—an eternity with no real family and no sense of belonging." Evelyn Lundberg Stratton, *Expediting the Adoption Process at the Appellate Level*, 28 Cap. U. L. Rev. 121, 121 (1999).

This Court has recognized that justice delayed in custody cases is too often justice denied. *See In re R.T.W.*, 359 N.C. at 545, 614 S.E.2d at 493 (commenting that "interminable custody battles do not serve the child's best interest"). Notably, our Rules of Appellate Procedure provide for expedited appeals in cases involving termination of parental rights and issues of juvenile abuse, neglect, and dependency. N.C. R. App. P. 3A. Thus, in almost all cases, delay is directly contrary to the best interests of children, which is the "polar star" of the North Carolina Juvenile Code. *In re Montgomery*, 311 N.C. 101, 109, 316 S.E.2d 246, 251 (1984) (emphasizing that "[t]he fundamental principle underlying North Carolina's approach to controversies involving child neglect and custody [is] that the best interest of the child is the polar star"); *see also* N.C.G.S. § 7B-100(5) (stating that "the best interests of the juvenile are of paramount consideration by the court"); *In re R.T.W.*, 359 N.C. at 552, 614 S.E.2d at 497 (noting that the denial of a stable home life for children is "completely repugnant to their best interests" and consequently to the Juvenile Code).

### The statutory deadline dilemma

Despite the harm to children inflicted by delay and despite the clear and unambiguous statutory deadlines, an alarming number of

**IN RE T.H.T.**

[362 N.C. 446 (2008)]

appeals over the past several years have involved significant viola-
tions by the trial courts of the statutory deadlines for entering orders
of adjudication and disposition, as well as permanency planning
orders and orders terminating parental rights.[2] In reviewing these
appeals, the Court of Appeals generally weighed the time require-
ments of the statutes against the practical effects of the delay and
examined the alleged harm resulting from the trial court's failure to
enter an order within the proscribed period. The Court of Appeals
tended to reverse or affirm the orders depending on the length of
delay, with six months being the typical "tipping-point" for reversal.
*See, e.g., In re R.L.,* —— N.C. App. ——, ——, 652 S.E.2d 327, 336 (2007)
(reversing order of adjudication entered seven months after the
statutory deadline); *In re D.M.M.,* 179 N.C. App. 383, 389, 633 S.E.2d
715, 718-19 (2006) (reversing based in part on seven-month delay in
entry of order of termination); *In re D.S.,* 177 N.C. App. 136, 140, 628
S.E.2d 31, 33-34 (2006) (reversing order of termination based solely
on seven-month delay in entry of order); *In re O.S.W.,* 175 N.C. App.
414, 415-16, 623 S.E.2d 349, 350-51 (2006) (reversing order of termi-
nation due to six-month delay); *In re T.W.,* 173 N.C. App. 153, 161-62,
617 S.E.2d 702, 706-07 (2005) (reversing order of termination based,
*inter alia,* on delay of nearly one year); *In re L.L.,* 172 N.C. App. 689,
697-700, 616 S.E.2d 392, 396-98 (2005) (concluding that a nine-month
delay in entry of a custody review order prejudiced the parties). In
such cases, the Court of Appeals reasoned that the parents were
"prejudiced" because notice of appeal could not be taken until entry
of the underlying order and all parties were denied a "sense of clo-
sure." *In re C.J.B.,* 171 N.C. App. 132, 135, 614 S.E.2d 368, 370 (2005).
Although the errors cited by the appellants in these cases arose only
after the hearings, the Court of Appeals nevertheless reversed and
remanded for new hearings. *See, e.g., In re R.L.,* —— N.C. App. at ——,
652 S.E.2d at 336 (remanding for additional proceedings while
acknowledging that "the ultimate result of our holding today is less
permanence for Respondents, and for [the children]"). At least one
judge at the Court of Appeals has articulated his disagreement with
this approach:

> I am troubled by our unexamined assumption that a permis-
> sible and appropriate remedy for delayed entry of the termina-
> tion of parental rights order is to reverse the order and remand
> for a new hearing. In the usual case, reversal is an appropriate

---

2. We have found at least eighty appeals in the past five years in which the
assigned error cited failure by the trial court to adhere to statutory deadlines.

**IN RE T.H.T.**

[362 N.C. 446 (2008)]

remedy precisely because the error at issue casts doubt on the outcome or verdict in the proceeding. A new trial or hearing is then required to ensure the fairness of the result in a case. In contrast, the delayed entry of an order for termination of parental rights does not cast doubt on the integrity of the decision.

Additionally, reversal of the order with its associated further delay does nothing to remedy the late entry of the termination order. . . . Ironically, this Court's decision to require a new termination of parental rights hearing generally delays finality for at least another year. This compounds the delay in obtaining permanence for the child, and continues the status quo concerning parents' lack of access to their children. Simply put, the "remedy" of reversing bears no relationship whatsoever to the wrong that it seeks to redress.

More significantly, I know of no statutory basis for our authority to reverse in this circumstance. Reversing orders on termination for the trial court's procedural failure to enter an order within the statutory duration is a draconian result that benefits no one.

*In re J.N.S.*, 180 N.C. App. 573, 580-81, 637 S.E.2d 914, 918-19 (2006) (Levinson, J., concurring) (emphasis omitted). Other judges have echoed these concerns. *See, e.g., C.L.K. v. Keeter*, 182 N.C. App. 600, 609, 643 S.E.2d 458, 463 (2007) (Geer, J., dissenting) ("With respect to respondent's delayed ability to appeal, the majority opinion has failed to explain in what manner that factor prejudiced respondent. If respondent desired to appeal more quickly, it was within his power to request that the court enter its order so that an appeal could be taken."); *In re J.Z.M.*, 184 N.C. App. 474, 480, 646 S.E.2d 631, 635 (2007) (Steelman, J., dissenting) ("The majority opinion confuses personal prejudice with legal prejudice and cannot show that the delay in any manner affected the outcome of [the] case."), *rev'd per curiam*, 362 N.C. 167, 655 S.E.2d 832 (2008).

In accordance with this line of Court of Appeals cases, respondent here argues that the delayed entry of the order of adjudication and disposition negatively affected (1) her ability to appeal, (2) her right to "ongoing review of her case," and (3) her efforts to "move forward" in her civil custody action. Respondent contends she was therefore "prejudiced" by the trial court's error, such that reversal of the adjudication order is required. Respondent does not assert, however—nor can she—that the delay in entry of the order of adjudica-

**IN RE T.H.T.**

[362 N.C. 446 (2008)]

tion and disposition had any possible impact upon the actual hearing or the ensuing order by the trial court. Indeed, respondent does not argue that the trial court erred in its substantive decision, only that it erred by entering the order three months past the statutory deadline.[3] Under such facts, "the delayed entry of an order . . . does not cast doubt on the integrity of the decision." *In re J.N.S.*, 180 N.C. App. at 580, 637 S.E.2d at 918 (Levinson, J., concurring). When the integrity of the trial court's decision is not in question, a new hearing serves no purpose, but only "compounds the delay in obtaining permanence for the child." *Id.* Thus, when delayed entry of an otherwise proper order is the sole purported ground for appeal, a new hearing is not the proper remedy. Instead, a party's remedy lies in mandamus.

**Mandamus**

Mandamus translates literally as "We command." *Black's Law Dictionary* 980 (8th ed. 2004). A writ of mandamus is an extraordinary court order to "a board, corporation, inferior court, officer or person commanding the performance of a specified official duty imposed by law." *Sutton v. Figgatt*, 280 N.C. 89, 93, 185 S.E.2d 97, 99 (1971). The appellate courts may issue writs of mandamus "to supervise and control the proceedings" of the lower courts. N.C.G.S. § 7A-32(b), (c) (2007). Appellate courts may only issue mandamus to enforce established rights, not to create new rights. *Moody v. Transylvania Cty.*, 271 N.C. 384, 390, 156 S.E.2d 716, 720 (1967). A court cannot refuse a petition for writ of mandamus when it is sought to enforce a clearly-established legal right. *Sutton*, 280 N.C. at 93, 185 S.E.2d at 99-100.

Mandamus lies when the following elements are present: First, the party seeking relief must demonstrate a clear legal right to the act requested. *Snow v. N.C. Bd. of Architecture*, 273 N.C. 559, 570, 160 S.E.2d 719, 727 (1968). Second, the defendant must have a legal duty to perform the act requested. *Moody*, 271 N.C. at 391, 156 S.E.2d at 721; *Steele v. Locke Cotton Mills Co.*, 231 N.C. 636, 640, 58 S.E.2d 620, 624 (1950) (noting that a defendant's duty to perform the act requested must exist both at the time of application for the writ and when the court issues the writ). Moreover, the duty must be clear and

---

3. The Court of Appeals majority concluded that the trial court did not err in adjudicating T.H.T. abused and neglected, *see In re T.H.T.*, 185 N.C. App. at ——, 648 S.E.2d at 525, and the dissent did not address the evidentiary issue. If respondent disputed the substantive merits of the order of adjudication and disposition (as she did before the Court of Appeals), she could have sought discretionary review from this Court in addition to giving her notice of appeal.

not reasonably debatable. *See Moody,* 271 N.C. at 390-91, 156 S.E.2d at 720-21. Third, performance of the duty-bound act must be ministerial in nature and not involve the exercise of discretion. *See id.* at 390, 156 S.E.2d at 720-21; *see also Gen. Elec. Co. v. Turner,* 275 N.C. 493, 497-98, 168 S.E.2d 385, 388 (1969) (observing that mandamus cannot be issued to control the manner of exercise of a discretionary duty (citations omitted)). Nevertheless, a court may issue a writ of mandamus to a public official compelling the official to make a discretionary decision, as long as the court does not require a particular result. *See Moody,* 271 N.C. at 390, 156 S.E.2d at 720; *see also Hamlet Hosp. & Training Sch. for Nurses, Inc. v. Joint Comm. on Standardization,* 234 N.C. 673, 680, 68 S.E.2d 862, 868 (1952) (noting that mandamus lies to "compel public officials to take action, but ordinarily [does] not require them, in matters involving the exercise of discretion, to act in any particular way" (citation omitted)). Fourth, the defendant must have "neglected or refused to perform" the act requested, and the time for performance of the act must have expired. *Sutton,* 280 N.C. at 93, 185 S.E.2d at 99. Mandamus may not be used to reprimand an official, to redress a past wrong, or to prevent a future legal injury. *Id.* at 93-94, 185 S.E.2d at 99-100. Finally, the court may only issue a writ of mandamus in the absence of an alternative, legally adequate remedy. *King v. Baldwin,* 276 N.C. 316, 321, 172 S.E.2d 12, 15 (1970); *Snow,* 273 N.C. at 570, 160 S.E.2d at 727. When appeal is the proper remedy, mandamus does not lie. *Snow,* 273 N.C. at 570, 160 S.E.2d at 727.

Mandamus is the proper remedy when the trial court fails to hold a hearing or enter an order as required by statute. For example, in *State v. Wilkinson,* the State, acting on behalf of a number of juveniles residing in a state mental health treatment facility, petitioned this Court for a writ of mandamus after the trial court refused to hold voluntary admission hearings that the State asserted were required by statute. 302 N.C. 393, 393-94, 275 S.E.2d 836, 837 (1981). Upon review, this Court agreed with the State that the hearings were mandated by statute and issued a writ of mandamus compelling the trial court to hold the hearings. *Id.* at 394, 275 S.E.2d at 837.

In *Stevens v. Guzman,* the Court of Appeals concluded that a writ of mandamus is the proper remedy for a trial court's failure to enter a written order. 140 N.C. App. 780, 783, 538 S.E.2d 590, 593 (2000), *disc. rev. improvidently allowed,* 354 N.C. 214, 552 S.E.2d 140 (2001). The plaintiff in *Stevens* moved for judgment notwithstanding the verdict and a new trial following a jury verdict in favor of the defendant.

*Id.* at 781, 538 S.E.2d at 591. The trial court denied these motions orally but did not enter a written order on the motions. *Id.* The plaintiff subsequently requested the trial court to reduce to writing its rulings on the plaintiff's motions, but the trial court refused. 140 N.C. App. at 781, 538 S.E.2d at 592. The plaintiff then appealed to the Court of Appeals, which acknowledged that the trial court was "obligat[ed] to enter orders disposing of a party's motions" but concluded that "[t]he failure of the trial court to enter an order, however, is not a matter to be addressed on an appeal from that inaction, but instead is to be addressed through a writ of mandamus filed with this Court." *Id.* at 783, 538 S.E.2d at 593 (citing N.C. R. App. P. 22(a)). The Court of Appeals therefore dismissed the appeal. *Id.*

In cases such as the present one in which the trial court fails to adhere to statutory time lines, mandamus is an appropriate and more timely alternative than an appeal. Meeting the statutory time line is not left to the trial court's discretion. When the trial court fails to enter its order or to call the subsequent hearing pursuant to N.C.G.S. § 7B-807(b), that failure is a ministerial action subject to mandamus. Once the clerk calendars the 7B-807(b) hearing, a trial court's failure to schedule the hearing promptly and enter its order may evince neglect and refusal to commit the order to writing. Finally, without an entry of judgment, appeal is not an alternative remedy. *See Logan v. Harris*, 90 N.C. 7, 7 (1884) (stating that to have a valid judgment, "it must be entered of record, and until this shall be done, there is nothing to appeal from"); *Abels v. Renfro Corp.*, 126 N.C. App. 800, 803, 486 S.E.2d 735, 737 ("This Court is without authority to entertain appeal of a case which lacks entry of judgment." (citation omitted)), *disc. rev. denied*, 347 N.C. 263, 493 S.E.2d 450 (1997); *see also* N.C. R. App. P. 3(c)(1) (stating that notice of appeal must be filed and served within thirty days after entry of judgment).

In child welfare cases in which a trial court fails to timely enter an order, mandamus is not only appropriate, but is the superior remedy. A writ of mandamus ensures that the trial courts adhere to statutory time frames without the ensuing delay of a lengthy appeal. Moreover, the availability of the remedy of mandamus ensures that the parties remain actively engaged in the district court process and do not "sit back" and rely upon an appeal to cure all wrongs. *See In re J.N.S.*, 180 N.C. App. at 581, 637 S.E.2d at 919 ("I do not agree that a party who waits passively for the trial court to perform the ministerial duty of entering an order—that which *mandamus* concerns—should be allowed to successfully argue on

appeal 'prejudice' resulting from the delayed entry of the order."); *In re L.L.*, 172 N.C. App. at 700, 616 S.E.2d at 398 (noting that "had [DSS] requested another review hearing earlier or petitioned for writ of mandamus, some of the delay may have been avoided"). Mandamus provides relatively swift enforcement of a party's already established legal rights, and we encourage parties to utilize mandamus in the appropriate circumstances.

Under the authorities we have discussed, a failure to proceed to judgment within a reasonable time deprives the parties of an adequate remedy at law, including the right to appeal a judgment entered. This Court does not have the authority to tell the trial court what judgment it should enter. We do, however, have the authority and the obligation to require the trial court to proceed to judgment when judgment has not been entered within the statutory time lines. Thus, when the trial court fails to enter an order of adjudication and disposition within thirty days after the adjudication and disposition hearing, a party should file a request with the clerk of court pursuant to N.C.G.S. § 7B-807(b) asking that the trial court enter its order or calendar a hearing "to determine and explain the reason for the delay." If the trial court refuses or neglects to enter the order or to calendar a hearing, or fails to enter its order within ten days following the 7B-807(b) hearing, a party may petition the Court of Appeals for a writ of mandamus. The party seeking relief should carefully adhere to the procedure for seeking mandamus as provided by "statute or rule of the Supreme Court or, in the absence of statute or rule, according to the practice and procedure of the common law." N.C.G.S. § 7A-32(b), (c); N.C. R. App. P. 22.

## CONCLUSION

We hold that in appeals from adjudicatory and dispositional orders in which the alleged error is the trial court's failure to adhere to statutory deadlines, such error arises subsequent to the hearing and therefore does not affect the integrity of the hearing itself. Thus, a new hearing serves no legitimate purpose and does not remedy the error. Indeed, a new hearing only exacerbates the error and causes further delay. Instead, a party seeking recourse for such error should petition for writ of mandamus.

In arriving at our decision, this Court is not unmindful of the difficulties facing a conscientious district court judge trying to balance a busy trial docket with the many other daily details requiring his or her attention, particularly when the volume of abuse, neglect, and

dependency cases continues to increase.[4] Further, we are aware that delay may be beneficial in some circumstances. However, regularly allowing bureaucratic failure to be the sole cause of delay in the entry of orders affecting a child's welfare is anathema to the principles underlying the Juvenile Code.

Because the alleged error occurred after the hearing, and as the three-month delay in entry of the order of adjudication and disposition cannot be remedied by a new hearing, we agree with the Court of Appeals that the trial court committed no prejudicial error. We therefore affirm as modified herein the opinion of the Court of Appeals.

MODIFIED AND AFFIRMED.

Chief Justice PARKER concurs in the result only.

4. According to the N.C. Administrative Office of the Courts, the number of abuse, neglect, and dependency petitions filed in district court has steadily increased over the last several years. *See* N.C. Admin. Office of the Courts, *North Carolina Courts FY 2005-06: Statistical and Operational Summary of the Judicial Branch of Government* 49 (2006).