IN THE MATTER OF: L.H., A.B., S.W., Minor Children.
No. COA08-882
Court of Appeals of North Carolina
Filed December 2, 2008
This case not for publication
Matthew J. Putnam for petitioner-appellee.
Carol Ann Bauer for respondent-appellant.
Jason Gast for guardian ad litem.
GEER, Judge.
Respondent mother appeals the trial court's orders adjudicating her three minor children neglected. Respondent mother asks us to vacate the orders and remand for a new hearing because the trial court failed to enter the orders within 30 days of the hearing. Subsequent to the filing of respondent mother's brief, however, our Supreme Court held in In re T.H.T., 362 N.C. 446, 453, 665 S.E.2d 54, 59 (2008), that the proper remedy for a trial court's failure to enter an adjudicatory order within the 30-day deadline is a writ of mandamus directing entry of the order, rather than an appellate court's ordering a new hearing following appeal of the delayed order. The trial court's delay in this case does not, therefore, provide a basis for reversing its order. We further hold that the trial court's conclusion of law that the minor children are neglected juveniles is supported by the unchallenged findings of fact. Accordingly, we affirm.
"A proper review of a trial court's finding of neglect entails a determination of (1) whether the findings of fact are supported by `clear and convincing evidence,' and (2) whether the legal conclusions are supported by the findings of fact[.]" In re Gleisner, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000) (internal citations omitted). When, as here, "a respondent does not challenge any of the trial court's adjudicatory findings of fact by a properly briefed assignment of error, the findings are deemed to be supported by competent evidence and are binding on appeal." In re M.A.I.B.K., 184 N.C. App. 218, 222, 645 S.E.2d 881, 884 (2007).

Facts
In the spring of 2007, the Buncombe County Department of Social Services ("DSS") received two reports that the minor children were being neglected by respondent mother. DSS had had a lengthy prior involvement with respondent mother and her children: DSS had previously received and investigated 26 reports of abuse and neglect of the minor children, seven of which were substantiated. On 17 August 2007, based on its investigation of the 2007 reports, DSS filed petitions alleging that the minor children were neglected juveniles in that they did not receive proper care, supervision, or discipline; they lived in an environment injurious to their welfare; and they were not provided with necessary medical or remedial care. Following a hearing on 5 December 2007 and 7, 9-11 January 2008, the trial court entered three orders on 11 April 2008 adjudicating each of the minor children to be a neglected juvenile.
In its orders, the trial court found the following facts, all of which are unchallenged and, therefore, binding on appeal. On 9 March 2007, DSS received a report that L.H. needed to be hospitalized for mental health issues, but respondent mother refused to allow the hospitalization. During its investigation, DSS learned that all three minor children have emotional, psychological, and behavioral problems and that each has been diagnosed as bi-polar.
After reviewing the children's mental health records and hearing testimony from mental health providers, school counselors, and social workers, the trial court found that "it is apparent that all of the minor children have significant and serious mental health issues, including extreme disrespect of authority figures, inability to monitor their own behaviors to conform to civilized behaviors, intense fighting [with] and cussing [at] each other and others, and all of these behaviors result directly from their modeling behaviors of the respondent mother."
The trial court found, based on the opinion of a mental health provider, that respondent mother's mental health issues are so severe that "it will be difficult if not impossible to address the minor children's mental health issues" until respondent mother addresses her own mental health issues. Respondent mother does not appreciate that her behaviors and actions are adversely affecting her children. She is angry and hostile and does not trust DSS and the mental health providers. On one occasion, she threatened to kill a DSS employee, stating: "You haven't seen anything yet. I will kill you; I will find you in the open and kill you. That is a promise, not a threat." Respondent mother was arrested for the threat, but the DSS employee had the charges dismissed when respondent mother agreed to a psychological evaluation. Respondent mother did not, however, fulfill her agreement to submit to a psychological evaluation.
Although the children have seen mental health providers, respondent mother has actively sabotaged the efforts of the providers and encouraged the minor children not to fully cooperate with them. Respondent mother does not ensure that the children take their prescribed medication and has, on occasion, substituted her own medication for the children's because she believes that she has a better idea of what medication her children need.
The minor children have numerous absences from school, many of which are unexcused, and have failing grades. Each of the children has received in-school and out-of-school supsensions for being disrespectful of staff, profanity, and making threats toward others. L.H. has been suspended from school for one month and has criminal charges pending against her as a result of threats she made to school officials. School counselors and teachers have been unable to maintain contact with respondent mother since she will not give them her cell phone number because she wants to save minutes. Respondent mother also told one teacher not to send the child home with homework because she was unable to help the child with her homework.
The trial court noted that respondent mother testified that she did not hospitalize L.H. in March 2007 because she believed that she could calm her child. Respondent mother indicated that she believed L.H.'s "melt-down" was due to an adverse reaction to her medication and L.H.'s problems were due to the failure of the mental health providers. Respondent mother testified that she gave L.H. a reduced dosage of her medication in order to protect L.H. She claimed that she only used foul language when necessary, and she told her children not to do everything she did, including using foul language. According to the trial court, "[t]he respondent mother testified that she had no responsibility for her children's difficulties, and that [DSS] was harassing her without justification." The trial court "found the respondent mother's testimony not credible, and her testimony showed that the respondent mother has a complete lack of understanding as to why her children are having such difficulties, how her own attitudes and behaviors are contributing to her children's problems, and that the respondent mother is not accepting any responsibility for her children having such problems with school, with the minor children's relationships with others, and with the minor children's ability to function successfully." Based on these findings, the trial court concluded that the minor children were neglected juveniles. In its dispositional orders, however, the trial court concluded that the minor children's best interests would be served by allowing them to remain in respondent mother's custody. The trial court explained that "removing the minor children from the respondent mother [would] only escalate the out of control behaviors of the minor children, and locating a foster placement that could handle these children's behaviors would be extremely difficult, if not impossible." The court, therefore, ordered that the minor children remain in the custody of respondent mother, but that respondent mother participate in a psychological evaluation, assist her children in receiving mental health care, participate in parenting classes and in regular DSS meetings, and make her children available to DSS when asked. Respondent mother timely appealed from the orders.

Discussion
Respondent mother first points out that the trial court failed to comply with N.C. Gen. Stat. § 7B-807(b) (2007), which provides that a trial court's adjudicatory order "shall be reduced to writing, signed, and entered no later than 30 days following the completion of the hearing." Under N.C. Gen. Stat. § 7B-905(a) (2007), there is also a 30-day deadline for entry of a disposition order.
The adjudicatory and dispositional hearings in this case were held on 5 December 2007 and 7, 9-11 January 2008. The corresponding orders were not filed until 11 April 2008, 90 days after the hearing, in violation of the statutory deadline. Respondent mother argues that she was prejudiced by the late filing of the orders  because of the delay's aggravation of her lack of trust in DSS  and, therefore, "the adjudication/disposition orders in this case should be vacated and the matter should be remanded for a new hearing."
Our Supreme Court, however, recently held:
[I]n appeals from adjudicatory and dispositional orders in which the alleged error is the trial court's failure to adhere to statutory deadlines, such error arises subsequent to the hearing and therefore does not affect the integrity of the hearing itself. Thus, a new hearing serves no legitimate purpose and does not remedy the error. Indeed, a new hearing only exacerbates the error and causes further delay. Instead, a party seeking recourse for such error should petition for writ of mandamus.
In re T.H.T., 362 N.C. at 456, 665 S.E.2d at 61. As a writ of mandamus would not be appropriate in this case because the orders have already been entered, see id. at 454, 665 S.E.2d at 59 (stating that mandamus cannot be used "to redress a past wrong"), there is no remedy available to respondent mother for the delay. This assignment of error is, therefore, overruled.
Respondent mother next contends that the following conclusion of law is not supported by the evidence:
That by clear, cogent and convincing evidence, the minor child is a neglected child pursuant to N.C.G.S. § 7B-101(15), in that the minor child has not received proper care, supervision or discipline from the respondent mother, the minor child has not been provided proper medical care and necessary remedial care, and the minor child lived in an environment injurious to her welfare while living with the respondent mother, as specified above.
Respondent mother did not, however, assign error to any of the trial court's findings of fact. As a result, our review is limited to the question whether the trial court's findings summarized above  and not the evidence in the record, as respondent mother contends  support the trial court's conclusions of law. In re Helms, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997).
Respondent mother's brief contains no argument on the question whether the findings of fact support the conclusion of law. Based upon our review of the order, however, we hold that the findings of fact do support the conclusion of law and the adjudication of neglect.
N.C. Gen. Stat. § 7B-101(15) (2007) defines a neglected juvenile as:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
In this case, the trial court found that the children have significant and serious mental health issues, but respondent mother has (1) interfered with the efforts of the children's mental health providers; (2) not ensured that the children take their mental health medication as prescribed, including substituting her own medication for the children's; and (3) blocked hospitalization of one of her children. The court further found that the children had numerous school absences, failing grades, and disciplinary problems. The behaviors resulting in school discipline, according to the trial court, "result[ed] directly from [the children] modeling behaviors of the respondent mother." Finally, the court found that "respondent mother has a complete lack of understanding as to why her children are having such difficulties, how her own attitudes and behaviors are contributing to her children's problems, and that the respondent mother is not accepting any responsibility for her children having such problems with school, with the minor children's relationships with others, and with the minor children's ability to function successfully."
These findings describe juveniles who meet the requirements of N.C. Gen. Stat. § 7B-101(15). We have previously held that similar behavior rises to the level of neglect. See In re C.P., L.P. & N.P., 181 N.C. App. 698, 704, 641 S.E.2d 13, 17 (2007) (holding that findings that mother delayed seeking necessary care for bruising and disciplinary, behavioral, and developmental problems displayed by children were sufficient to support conclusion that children were neglected); In re Thompson, 64 N.C. App. 95, 101, 306 S.E.2d 792, 795-96 (1983) (holding that a mother's failure to allow her child to be evaluated and treated by mental health providers constituted neglect); In re Huber, 57 N.C. App. 453, 458, 291 S.E.2d 916, 919 (upholding finding of neglect when mother failed to allow child to receive necessary medical and remedial care and treatment), appeal dismissed and disc. review denied, 306 N.C. 557, 294 S.E.2d 223 (1982). We, therefore, affirm the trial court's orders adjudicating the minor children to be neglected juveniles.
Affirmed.
Judges HUNTER and ARROWOOD concur.
Report per Rule 30(e).