IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-24

No. 196A20

Filed 19 March 2021

IN THE MATTER OF: C.R.L., K.W.D.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 10 February 2020 by Judge Roy Wijewickrama in District Court, Jackson County. This matter was calendared for argument in the Supreme Court on 11 February 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Jane R. Thompson for petitioner-appellee Jackson County Department of Social Services.*

*Leah D'Aurora Richardson for appellee Guardian ad Litem.*

*Peter Wood for respondent-appellant father.*

HUDSON, Justice.

Respondent-father appeals from the trial court's order terminating his parental rights to his minor children C.R.L. (Craig) and K.W.D. (Kent).[1] He argues that the trial court committed reversible error by holding the termination hearing more than ninety days after the Jackson County Department of Social Services (DSS) filed its petitions to terminate his parental rights, in violation of N.C.G.S. § 7B-1109.

---

[1] Pseudonyms are used to protect the identities of the juveniles and for ease of reading.

After reviewing this claim, we conclude that the issue should have been addressed by the filing of a petition for writ of mandamus while the termination petitions were still pending; consequently, we affirm the termination order.

DSS became involved with this family after receiving a child protective services (CPS) report that the children's mother tested positive for both methamphetamine and amphetamine in the weeks prior to and at the time of Kent's birth. A DSS social worker investigating the CPS report learned that the parents previously had their parental rights to two older children terminated in New Jersey. The parents agreed to place Craig and Kent in a kinship placement with family friends. Kent suffered from multiple health problems as he went through withdrawal from the drugs to which he was exposed. On 28 May 2015, the family friends informed DSS that they would be unable to provide long-term kinship care for Craig and Kent.

On 8 June 2015, DSS filed juvenile petitions alleging that Craig was a neglected juvenile and Kent was an abused and neglected juvenile. In addition to the facts above, DSS alleged that both parents had recent positive drug screens, that they were living in a camper with the children's maternal grandparents, and that they were currently unemployed. On 26 August 2015, the trial court entered a consent adjudication order concluding that both children were neglected juveniles. On 26 October 2015, the trial court entered a disposition order which indicated that both parents had entered case plans with DSS and they were addressing the issues

identified therein. Both parents were awarded supervised visitation three hours per week.

On 18 January 2017, the trial court entered a permanency planning review hearing order in which it found that respondent-father's whereabouts were no longer known to DSS and that DSS did not know how to reach him. The trial court suspended visitation with respondent-father until he provided two consecutive negative drug screens. Although respondent-father was located by the next permanency planning review hearing, his visitation remained suspended as the neglect case progressed because the trial court repeatedly concluded that continuing the suspension was in the children's best interests.

DSS filed termination petitions on 22 March 2017, alleging that respondent-father's parental rights to Craig and Kent were subject to termination on three grounds: that respondent-father had neglected the children; that he willfully left the children in foster care or a placement outside the home for more than twelve months without making reasonable progress toward correcting the conditions that led to their removal from the home; and that his parental rights with respect to another child had been terminated involuntarily and he lacked the ability or willingness to establish a safe home. *See* N.C.G.S. § 7B-1111(a)(1), (2), (9) (2019). After the petitions were filed, the trial court ordered DSS to notice the case for hearing in orders entered on 4 October 2017, 23 August 2018, 21 May 2019, and 25 July 2019. However, the

termination petitions were not heard until 9 and 10 December 2019, approximately thirty-three months after they were filed.

On 10 February 2020, the trial court entered an order terminating respondent-father's parental rights.[2] The order included a finding noting that the matter came on for hearing more than ninety days after the filing of the petitions and attempting to provide an explanation for the delay. The trial court concluded that all three grounds for termination alleged by DSS existed and that termination was in Craig's and Kent's best interests. Respondent-father appealed.

Respondent-father's sole challenge to the termination order is that it was entered after a termination hearing that was conducted thirty-three months after DSS filed the termination petitions. He contends that this delay violated N.C.G.S. § 7B-1109, which sets out the following requirements for when a termination-of-parental-rights adjudicatory hearing shall occur:

> (a) The hearing on the termination of parental rights shall be conducted by the court sitting without a jury and shall be held in the district at such time and place as the chief district court judge shall designate, but no later than 90 days from the filing of the petition or motion unless the judge pursuant to subsection (d) of this section orders that it be held at a later time. Reporting of the hearing shall be as provided by G.S. 7A-198 for reporting civil trials.
>
> . . . .

---

[2] The order also terminated the parental rights of Craig and Kent's mother. She is not a party to this appeal.

> (d) The court may for good cause shown continue the hearing for up to 90 days from the date of the initial petition in order to receive additional evidence including any reports or assessments that the court has requested, to allow the parties to conduct expeditious discovery, or to receive any other information needed in the best interests of the juvenile. Continuances that extend beyond 90 days after the initial petition shall be granted only in extraordinary circumstances when necessary for the proper administration of justice, and the court shall issue a written order stating the grounds for granting the continuance.

N.C.G.S. § 7B-1109(a), (d). All of the parties agree that this statute was violated in this case, since the termination hearing was held well beyond ninety days after DSS filed the termination petitions and no continuances for extraordinary circumstances were requested or granted to permit this delay.[3] But, as this Court has previously held, this statutory violation should have been remedied *while it was occurring* by the filing of a petition for writ of mandamus. *See In re T.H.T.*, 362 N.C. 446, 454 (2008) ("Mandamus is the proper remedy when the trial court fails to hold a hearing or enter an order as required by statute.").

In *In re T.H.T.*, this Court emphasized the importance of swiftly resolving child welfare cases, noting that "in almost all cases, delay is directly contrary to the best

---

[3] In the termination order, the trial court made a finding of fact which attempted to explain why the hearing occurred more than ninety days after the petitions were filed. This finding is immaterial because it cannot cure the violation, which requires the issuance of written orders continuing the hearing during the period of delay, and no such orders were entered in this matter. *See* N.C.G.S. § 7B-1109(d) (2019).

interests of children, which is the 'polar star' of the North Carolina Juvenile Code."

*Id.* at 450 (quoting *In re Montgomery*, 311 N.C. 101, 109 (1984)). The trial court in *In re T.H.T.* had failed to enter adjudication and disposition orders before the statutory deadlines, and this Court concluded that the respondent's failure to file a petition for writ of mandamus during the delay was fatal to her appeal:

> We hold that in appeals from adjudicatory and dispositional orders in which the alleged error is the trial court's failure to adhere to statutory deadlines, such error arises subsequent to the hearing and therefore does not affect the integrity of the hearing itself. Thus, a new hearing serves no legitimate purpose and does not remedy the error. Indeed, a new hearing only exacerbates the error and causes further delay. Instead, a party seeking recourse for such error should petition for writ of mandamus.

*Id.* at 456. While in this case the error occurred prior to, rather than after, the hearing at issue, the reasoning underlying our holding in *In re T.H.T.* applies with equal force here. In both situations, "the availability of the remedy of mandamus ensures that the parties remain actively engaged in the district court process and do not 'sit back' and rely upon an appeal to cure all wrongs." *Id.* at 455. Moreover, unlike "a lengthy appeal" which "exacerbates the error and causes further delay[,]" "[m]andamus provides relatively swift enforcement of a party's already established legal rights." *Id.* at 455–56.

In this case, respondent-father failed to file a petition for writ of mandamus at any point during the thirty-three months between the filing of the termination

petitions and the termination hearing, and he offers no explanation for this failure. Instead, he sat on his rights and allowed the delay to continue without objection. At this juncture, granting relief based only on this violation of the statutory deadline would merely exacerbate the delay below. As we noted in *In re T.H.T.*, "[w]hen the integrity of the trial court's decision is not in question, a new hearing serves no purpose, but only 'compounds the delay in obtaining permanence for the child.' " *Id.* at 453 (quoting *In re J.N.S.*, 180 N.C. App. 573, 580 (2006)).

¶ 10    Respondent-father argues that the violation of N.C.G.S. § 7B-1109 in this case created a delay that was so egregious that it should be considered presumptively prejudicial. He further argues that the significant delay necessarily diminished his bond with his sons while at the same time strengthening their bond with their foster family, which in turn impacted the trial court's determination of Craig's and Kent's best interests. In making these arguments, respondent-father fails to grapple with both his own inaction while the alleged prejudice was occurring and this Court's decision in *In re T.H.T.*—a decision he does not acknowledge in his brief and thus makes no attempt to distinguish from this case. But respondent-father's disregard of this Court's precedent does not relieve us of our obligation to apply it: if respondent-father believed he was being harmed by the trial court's delay in violation of N.C.G.S. § 7B-1109, the proper recourse was a petition for writ of mandamus. *See In re T.H.T.*,

362 N.C. at 456. It is now too late to obtain relief from the statutory violation, and a new hearing would be both futile and unfair. This argument is overruled.

¶ 11      "In cases such as the present one in which the trial court fails to adhere to statutory time lines, mandamus is an appropriate and more timely alternative than an appeal." *Id.* at 455. Here, respondent-father did not file a petition for writ of mandamus while the termination petitions were pending, and therefore, he missed his opportunity to remedy the violation of N.C.G.S. § 7B-1109. Since respondent-father raises no other exceptions to the trial court's order, we affirm the order terminating his parental rights.

AFFIRMED.