IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-274

Filed 6 May 2026

Henderson County, No. 20CVD000268-440

SAMANTHA LYNN PRICE, Plaintiff,

v.

NATHAN BRECKENRIDGE PRICE, Defendant.

Appeal by plaintiff from order entered 30 April 2024 by Judge Gene B. Johnson in District Court, Henderson County. Heard in the Court of Appeals 18 November 2025.

*Schiller & Schiller, PLLC, by David G. Schiller, for plaintiff-appellant.*

*No brief filed for defendant-appellee.*

*Blue Ridge Family Law Group, by Krista S. Peace, for intervenor-appellees Susan Anna Price and Rustin Edwards Price.*

STROUD, Judge.

Plaintiff Samantha Price (Mother) appeals from a permanent custody order awarding sole legal and primary physical custody of her two minor children to the children's paternal grandparents, intervenors Susan Price and Rustin Price (Grandparents). The trial court found by clear, cogent, and convincing evidence that both Mother and Defendant Nathan Price (Father) had neglected the children and acted inconsistently with their constitutionally-protected status as parents.

Mother challenges several of the trial court's findings as unsupported by the evidence, its conclusion that she is an unfit parent, its failure to find a change of circumstances from a prior temporary order, and prejudice from the two-year delay in entry of the order. But she provided transcripts for only three of the seven hearing days and excluded every exhibit admitted at trial. The record is insufficient for this Court to review most of her arguments, and we accept the court's findings as supported by the evidence. Mother's remaining arguments are without merit. We therefore affirm.

## I. Background

Mother and Father are the parents of two children. On 7 February 2020, Mother filed a complaint against Father seeking custody of the children. Mother and Father entered into a Temporary Child Custody Memorandum of Order (Memorandum or Memorandum of Order) on 30 September 2020, which allowed the children's Grandparents to intervene as parties. The Memorandum granted joint legal custody to Mother, Father, and the Grandparents and provided that the children would "reside primarily" with their Grandparents. It also granted Mother visitation with the children on specified days and required her to "obtain a mental health assessment from a licensed mental health professional" and provide the report to Grandparents. The court entered the order as "a temporary child custody order, . . . without prejudice to either party."

The trial court held a hearing on Mother's custody complaint and "Intervenor-

Grandparents' Motion to Intervene and Intervenor Child Custody Complaint filed February 17, 2020," over several dates from 4 April 2022 through 17 May 2022. On 30 April 2024, the court entered a Permanent Child Custody Order (Order) containing fifty-five detailed findings of fact. The court determined by clear, cogent, and convincing evidence that both Mother and Father had neglected the children, were "not . . . fit and proper person[s]" to have custody and had acted inconsistently with their constitutionally protected status as parents. It further found that Grandparents were "fit and proper persons to have sole legal and primary physical custody" of them and that the children's best interests required Mother and Father to have "some limited visitation." The court made seventeen detailed conclusions of law and awarded Grandparents sole legal and primary physical custody. It also ordered specific secondary custodial time in the form of visitation for each parent.

On 29 May 2024, Mother timely appealed.

## II.     Jurisdiction

This Court has jurisdiction to review Mother's appeal from the trial court's Order under North Carolina General Statute Section 7A-27(b). *See* N.C. Gen. Stat. § 7A-27(b)(2) (2023) ("[A]ppeal lies of right directly to the Court of Appeals . . . [f]rom any final judgment of a district court in a civil action.").

## III.     Analysis

### A.  Deficiencies in the Record on Appeal

Mother challenges many of the trial court's findings of fact as unsupported by

the evidence. But she filed transcripts for only three of the seven hearing days, contending that the omitted testimony was "duplicative and did not merit inclusion in the [r]ecord." She also excluded every exhibit admitted at the hearing, deeming them "unnecessary to an understanding of the issues on appeal." Grandparents maintain that the record on appeal does not comply with Rule 9 of the North Carolina Rules of Appellate Procedure and is insufficient to permit appellate review of most or all of Mother's arguments. *See* N.C. R. App. P. 9(a) ("In appeals from the trial division of the General Court of Justice, review is solely upon the record on appeal. The components of the record . . . include: the printed record, transcripts, exhibits and other items included in the record on appeal pursuant to Rule 9(d) . . . ."). We agree.

Mother relies on *Scott v. Scott*, 293 N.C. App. 639, 901 S.E.2d 846 (2024), insisting that the record is adequate and that she did not need to provide a full transcript. She notes that the appellant in *Scott* "did not provide a transcript" yet still received appellate review. True enough—but the appellant in *Scott*, like Mother, challenged several findings of fact as unsupported by the evidence. *See id.* at 646, 901 S.E.2d at 851. Our response to that argument in *Scott* applies with equal force here. There, we explained that "without a transcript, we must accept the trial court's findings of fact as supported by the evidence" because "the appellant—not the appellee—has the duty to ensure that the record is complete." *Id.* at 646, 901 S.E.2d at 851-52. We pointed to *Hicks v. Alford*, where this Court confronted the same deficiency:

> [The p]laintiff failed to include in her appeal a transcript of the evidence presented to the trial court. . . . *"If the appellant intends to urge on appeal that a finding or conclusion of the trial court is unsupported by the evidence or is contrary to the evidence, the appellant shall file with the record on appeal a transcript of all evidence relevant to such finding or conclusion." . . . Similarly, Rule 9 of the North Carolina Rules of Appellate Procedure requires the appellant to include in the record on appeal "so much of the evidence . . . as is necessary for an understanding of all errors assigned." . . . It is the duty of the appellant to ensure that the record is complete. . . . "An appellate court is not required to, and should not, assume error by the trial judge when none appears on the record before the appellate court." . . .* Without the transcript, we are unable to review [the] plaintiff's argument that the trial court erred in making findings of fact that are unsupported by the evidence.

*Id.* at 646-47, 901 S.E.2d at 52 (emphasis added) (quoting 156 N.C. App. 384, 389-90, 576 S.E.2d 410, 414 (2003)).

Mother also inexplicably cites *Thompson v. Rock Barn*, 299 N.C. App. 143, 918 S.E.2d 24 (2025). She attempts to distinguish *Thompson* because the appellant there "selectively picked out favorable testimony," whereas she included "the testimony of the people who are in effect the true parties to this dispute (the mother and paternal grandmother) and a social worker."

The analysis in *Thompson* undercuts rather than supports Mother's position. To begin, the deficiency there was not limited to selective portions of the testimony. We held that providing "only a portion of the transcript" from a long trial—with some

days entirely absent and only fragments of certain witnesses' testimony—did not satisfy Rule 9's requirement to provide enough of the record to permit appellate review. *Id.* at 145-46, 918 S.E.2d at 26. And in *Thompson*, this Court assessed—and rejected—the appellants' attempt to recast *Scott* as placing the burden on "each respective party" to include evidence sufficient to prevail, calling it "a blatant misstatement of our caselaw regarding the burden of creating and settling the record." *Id.* at 146, 918 S.E.2d at 26. We made clear that the burden "rests squarely on the appellant, not on either 'respective party.' " *Id.* And we warned that "[a]ny appellant's failure to properly prepare the record pursuant to Rule 9 or any attempts to present a record which only support materials favorable to the appellant is a certain path to failure." *Id.* at 147, 918 S.E.2d at 27. Mother's record suffers from the same fundamental defect: transcripts for only three of seven hearing days and not a single exhibit.

Mother offers several additional justifications for these omissions. She argues that "[p]roviding all of the hearing testimony would have risked running afoul of [Rule] 9(b)(2)" because some witnesses "had very little to say that had any bearing on the best interests of the children." *See* N.C. R. App. P 9(b)(2) ("It shall be the duty of counsel for all parties to an appeal to avoid including in the printed record matter not necessary for an understanding of the issues presented on appeal."). She also contends that Grandparents "failed to point to evidence that was not included in the [r]ecord that would make a difference to this Court's review."

Neither argument has merit. Mother's characterization of the omitted testimony is inappropriate—for she did not include it, so we have no way of knowing what those witnesses said. And her suggestion that Grandparents bear some obligation to identify specific omissions from the record "that would make a difference to this Court's review" is baffling: if the testimony or evidence is not in the record, no party can "point to" it. Even so, Grandparents have identified several obvious and relevant gaps revealed by the limited transcripts before us—most notably, the absence of all exhibits. For example, Mother called Mr. Garret as a witness—a clinical worker who had conducted a "child/family" investigation for the Polk County Department of Social Services (DSS) based on a report of the children's abuse and neglect while in Mother's and Father's care. During his testimony, Mother offered as "Plaintiff's Exhibit 1" Mr. Garret's report, which was "based on [thirty-three] interviews" and contained "conclusions and recommendations." The transcript reveals many questions and answers referring to that exhibit's contents, making much of the testimony unintelligible without it. Yet Mother did not include Plaintiff's Exhibit 1—or any other exhibit—in the record.

Because Mother has failed to provide full transcripts and the exhibits admitted at trial, "we must assume the trial court's findings are supported by the evidence." *Scott*, 293 N.C. App. at 646, 901 S.E.2d at 852. We therefore decline to assess Mother's challenges to the trial court's findings of fact.

**B. Children's Best Interests**

Mother also argues, relying on *Steele v. Steele*, 36 N.C. App. 601, 604, 244 S.E.2d 466, 468 (1978), that the trial court failed to make sufficient findings to address the children's best interests because the findings "do not disclose facts that 'concern [the] physical, mental, or financial fitness or any other factors brought out by the evidence and relevant to the issue of the welfare of the child[ren].'" In *Steele*, the appellant argued that the trial court's order lacked sufficient findings of fact or conclusions of law, the appellee "concur[red] in [the appellant's] request for remand," and this Court remanded for entry of an order with findings of fact. *Id.* at 602, 244 S.E.2d at 468.

This case bears no resemblance to *Steele*. Here, the trial court made fifty-five detailed findings about various factors relevant to the children's welfare. To mention just a few, the court found that Mother "maintained a dirty and unsanitary home" with food left out "until it practically rotted." The children's diapers were "often overfilled with urine and feces," and they often "smelled bad." Mother did not feed the children properly, and one child was "in the bottom 5th percentile for growth." Mother refused "suggestions to improve" or "constructive criticism" about her care. At one point, Mother and Father lived in a camper, which lacked "running water, a kitchen, a shower, and other amenities," and was "unsuitable" for the children. By contrast, Grandparents—with whom the children had lived since January 2018— provided a suitable home, enrolled the children in school, arranged therapy to address their "anxiety and behavioral issues," and supported them financially without

assistance from either parent.

The trial court's findings are sufficient to show its consideration of the children's best interests. Mother's argument to the contrary is without merit.

## C. Failure to Find Change of Circumstances

Mother argues that the trial court erred by entering the Order without finding a change of circumstances to support modification of the Memorandum of Order. In her view, the passage of time between the Memorandum and the hearing was sufficient to transform the temporary order into a permanent order. Grandparents note that the handwritten Memorandum was a "bare-bones agreement" with a "clear statement" that it was entered as a temporary order and without prejudice. They also assert that the record fails to include sufficient information for this Court to tell what occurred between the Memorandum's entry and the custody trial—no notices of hearing, no continuance orders, and no records of continuances related to the DSS investigation referenced in the Order.

We agree with Grandparents and emphasize that the record's deficiencies go further than the absence of documents filed with the trial court. Because Mother provided only "excerpts" of witness testimony and none of the parties' arguments below, nothing before us indicates that she argued to the trial court that the Memorandum had transformed into a permanent order. And nothing shows she requested that the court determine whether there had been a change in circumstances since the Memorandum's entry. Once again, the record is insufficient

for us to review Mother's argument, and we will not presume error where the record shows none. *See Hicks*, 156 N.C. App. at 390, 576 S.E.2d at 414 ("An appellate court is not required to, and should not, assume error by the trial judge when none appears on the record before the appellate court." (citation omitted)).

## D. Unfitness of Parent

Mother argues that the trial court "erred in concluding that [she] was an unfit parent." Citing *Perdue v. Fuqua*, 195 N.C. App. 583, 673 S.E.2d 145 (2009), she contends that the trial court erred because "[a]n examination of a parent's unfitness or acts inconsistent with constitutionally-protected status do not include socioeconomic factors, such as the condition of the parent's home."

*Perdue* does not stand for this proposition. In that case, a grandmother sought to intervene in a custody proceeding, and the trial court denied her motion for lack of standing. *Id.* at 584-85, 673 S.E.2d at 147. The grandmother had not alleged that the parents were unfit, had neglected the child, or had acted "in a manner inconsistent with the paramount status provided by the Constitution." *Id.* at 586-87, 673 S.E.2d at 148. So she lacked standing to intervene. *Id.* The only mention of socioeconomic factors in *Perdue* came in response to the grandmother's argument that she would be a better caregiver than the parents. We stated that an "assertion that [the intervenor] would be able to afford the minor child a higher standard of living is not relevant to the issue of [the parents'] constitutionally protected parental interest." *Id.* at 588, 673 S.E.2d at 149 (citation omitted).

Here, there was no issue raised about Grandparents' intervention as parties. And even the brief summary of the trial court's findings set out above makes plain that the court did not find Mother unfit based on Grandparents' "higher standard of living."

Mother also argues that the trial court's findings fail to "reflect the *current* state of [her] home" or her employment and living circumstances. Certainly, the trial court could address only the circumstances existing at the time of the hearing, but we note that it did find that Mother was no longer living with Father in the camper that lacked running water and was instead "living in a 3-bedroom house" with Terry, a man she had begun dating after separating from Father, and Terry's son. The court also made findings regarding the DSS investigation and its involvement with the parties, "particularly as it concern[ed] the treatment and alleged sexual abuse of the minor children when left in the care of [Mother] and Terry." The trial court's findings support its conclusion that Mother was unfit and had acted inconsistently with her constitutionally protected parental rights.

## E. Delay in Order Entry

Mother argues that the Order was entered two years after the hearing, and that she has been unable to find a reported case where a trial court has taken a custody case under advisement for so long. She claims that because there are no findings as to her "current living situation," it is "questionable whether a court can make a fair and informed decision about a child's best interest."

First, Mother has argued, but shown no prejudice, from the delay. The trial court could consider only the circumstances existing at the time of the hearing, and any future change of circumstances would be measured from that date—not from the date the Order was entered. *See Stern v. Stern*, 264 N.C. App. 585, 593, 826 S.E.2d 490, 496 (2019) (noting that a trial court should consider changes of circumstances from the date of the last custody hearing rather than from the date of the entry of the order resulting from that hearing). The delay in the Order's entry does not affect Mother's ability to seek a modification of the Order based on changed circumstances arising after the hearing.

Further, Mother has not demonstrated that she raised the issue of delay in the Order's entry with the trial court. In *Ludack v. Ludack*, this Court addressed a thirty-eight-month delay in entry of a custody order under North Carolina General Statute Section 50-13.2 and set out the governing framework on this issue.[1] 297 N.C. App. 72, 79-80, 910 S.E.2d 720, 725-26 (2024); *see also* N.C. Gen. Stat. § 50-13.2 (2023) (requiring, in relevant part, that custody orders include "written findings" reflecting the court's consideration of all relevant factors bearing on the child's best interest). Drawing on our Supreme Court's analysis of delay in the analogous context of termination-of-parental-rights proceedings, we held that vacating or reversing an

---

[1] Although Mother argues that she could not find a custody case with a two-year delay in entry of the order, this Court issued *Ludack* in December 2024, about six months before Mother filed her brief in June 2025.

order only for delay is not a proper remedy. *Id.* at 80, 910 S.E.2d at 725 (citing *In re T.H.T.*, 362 N.C. 446, 452-53, 665 S.E.2d 54, 58-59 (2008)). As the Supreme Court observed in *T.H.T.*, "[w]hen the integrity of the trial court's decision is not in question, a new hearing serves no purpose, but only 'compounds the delay.'" *Id.* at 79, 910 S.E.2d at 725 (quoting *T.H.T.*, 362 N.C. at 453, 665 S.E.2d at 59).

We ultimately held that a party who wants the trial court "to enter its written order in a timelier manner" must act at the trial court level—by moving "for a hearing on entry of the order or fil[ing] a writ of mandamus"—rather than raising the issue for the first time on appeal:

> If a party would like to hold the court accountable to its statutory duty to enter a written order under [S]ection 50-13.2(a), and impose timeliness, the proper remedy is not to argue prejudicial delay for the first time on appeal. Rather, the party should file a writ of mandamus, or employ another method of requesting the court act, in the trial court.

*Id.* at 80, 910 S.E.2d at 725, 726. The Court reasoned that because the legislature chose not to mandate a timeliness requirement for written orders under Section 50-13.2, "it would be illogical to implement a stricter standard of prejudicial delay in this context." *Id.* at 80, 910 S.E.2d at 726. We also observed that in *Ludack* itself, though the record was "unclear specifically what proceedings and motions may have occurred during the thirty-eight-month delay," it at least showed that "the parties came before the court multiple times." *Id.* Yet "neither party addressed the court's delay" until the mother "finally moved for a hearing to request the trial court enter its written

order after approximately thirty-six months." *Id.* We stated that "[e]ither party could have made this motion at an earlier time." *Id.*

Here, the delay between the hearing and the Order's entry was about two years—shorter than the thirty-eight-month delay this Court found nonprejudicial in *Ludack. See id.* And our record is even more unclear than the record in *Ludack* as to what "may have occurred during" the delay; it does not show that the parties came before the trial court at all. Mother did not move "for a hearing to request the trial court enter its written order," schedule a status conference, file a petition for writ of mandamus, or take any other action to request the trial court enter its order. *Id.* She raised the delay issue for the first time on appeal, the very approach this Court held unavailing in *Ludack. See id.* at 80, 910 S.E.2d at 725-26. Mother's argument is without merit.[2] The trial court's order is affirmed.

AFFIRMED.

Chief Judge DILLON and Judge TYSON concur.

---

[2] Although Mother has not demonstrated any basis for appellate relief due to the delay in the Order's entry, this opinion should not be construed as *approving* a two-year delay. The current North Carolina Family Court Time Standards, as amended in 2025, provide that "[a]ll orders should be filed within [thirty] days following the conclusion of a hearing" and that "[a] judge may allow additional time to file an order in complex cases." N.C. Judicial Branch, North Carolina Family Court Time Standards, https://www.nccourts.gov/courts/family-law (last visited April 15, 2026). The Time Standards also set a goal of entering a permanent child custody order "[w]ithin 360 days" of the filing of a custody complaint. *Id.*