IN THE MATTER OF: VANESSA ANN HUGHES, Minor Child; RESPONDENT:
ATHENA ROSS HUGHES

No. 8429DC995

(Filed 4 June 1985)

1. **Parent and Child § 2.2— burns suffered by child—competency of doctor's testimony**

   In an action to adjudicate a child as abused and neglected, a doctor's testimony further explaining his description of the size of a burn on the child's buttock and why it was of such irregular shape and of lesser degree than burns on the child's feet and his testimony describing the extreme pain caused by the burns and the normal reaction of a person exposed to such intense heat produced relevant facts and was properly admitted although such testimony did not come within the scope of the questions asked.

2. **Parent and Child § 2.2— burns suffered by child—child abuse and neglect—sufficiency of evidence and findings**

   Although respondent mother offered evidence that burns suffered by her child were accidental, testimony by an expert in pediatrics and the treatment of abused children and other evidence supported the trial court's findings that the burns were intentionally inflicted and that respondent inflicted them or allowed them to be inflicted, and these findings supported the trial court's conclusions that the child was an abused and neglected juvenile who did not receive proper care from respondent and that the child should be placed in the custody of the county department of social services.

APPEAL by respondent from *Greenlee, Judge.* Judgment entered 4 May 1984 in District Court, McDOWELL County. Heard in the Court of Appeals 19 April 1985.

This action is based on a juvenile petition seeking to place legal and physical custody of Vanessa Ann Hughes, minor child of respondent-appellant Athena Ross Hughes, in the McDowell County Department of Social Services and to adjudicate the minor child as an abused and neglected juvenile as defined in G.S. 7A-517(1)(a).

The essential facts are:

On the evening of 2 April 1984 the respondent, Athena Hughes, and her 23 month old daughter, Vanessa Ann Hughes, visited overnight with the respondent's friend Brenda Whitson. In addition to respondent and her daughter Vanessa, at the Whitson home that night were Mrs. Whitson, her son Chad age nine, her

daughter Kelly age 3½-4 years, and a male friend of Mrs. Whitson.

On the morning of 3 April 1984, Byron F. Alexander, a protective services worker with the McDowell County Department of Social Services, was called to the McDowell Hospital. There he found the respondent, Vanessa and Mrs. Whitson. Mr. Alexander learned that Vanessa was being treated for severe "stocking" type burns on both her feet. He questioned the respondent and Mrs. Whitson about how Vanessa had received the burns. The next day, Vanessa was transferred to Memorial Mission Hospital in Asheville and placed under the care of Dr. Fredrick Rector, Jr., a pediatrician. Based on the referral by the McDowell Hospital, a juvenile petition was filed by the McDowell County Department of Social Services on 3 April 1984 and served on the respondent.

At the 4 May 1984 hearing, Dr. Rector was qualified and testified as an expert in the field of pediatrics and treatment of abused children. He stated that Vanessa had received extremely deep second and third degree burns of a "stocking" type, covering her feet and extending approximately six inches up her legs. The burns were uniform in nature and of equal depth, except for the soles of her feet. Vanessa also sustained first and second degree burns in a small area on her buttock. There was no other evidence of any other burns on the child's body. Dr. Rector also testified that some skin grafts had already been performed, more grafts would be required in the future and the severe burns to the feet would leave permanent scars.

In Dr. Rector's opinion the burns were "non-accidental." He gave several reasons for this opinion, some of which the trial court included in its findings of fact: the burns were very neat burns, uniform in nature and of equal depth; there were no splash marks on her body which indicated that Vanessa had not splashed or thrashed about in the water; bath water hot enough to deliver the degree of burns received by Vanessa would be hot enough to leave first degree burns in areas where splash marks occurred, had there been any; the type of burns Vanessa received would be extremely painful and the normal reaction of a child exposed to such hot water would be to escape, churning up the water in the process; the burns were consistent with a child standing flat

footed in a tub filled with approximately six inches of hot water, without enough movement by the child to create splash marks.

Dr. Rector also testified that he had numerous experiences with children who received burns, both accidental and non-accidental. In his opinion, Vanessa's behavior and reaction to hospital personnel during the first ten days following her injuries were consistent with a child who had received intentional burns, in that the child "appeared to withdraw into a shell."

The respondent's evidence tended to show that on the night of 2 April 1984 she went to bed at approximately 12:00 a.m. after consuming two beers. She was not intoxicated. She slept in a king size bed with Vanessa in Brenda Whitson's bedroom. Mrs. Whitson came to bed later and the three individuals occupied the same bed for the night. The respondent testified that she did not awaken until the next morning when Mrs. Whitson woke her up and showed her the burns on Vanessa's feet. The respondent testified that she never heard water running or any screams from Vanessa. She also testified that Vanessa is capable of climbing into a bathtub by herself and has done so frequently in the past. The respondent testified that Vanessa cries softly and she has never heard Vanessa scream, even when she is hurt.

Mrs. Brenda Whitson testified that on the night of 2 April 1984 she slept in the same bed with the respondent and Vanessa. Frankie Smith, her male house guest, slept on the couch in the living room. When she woke up the morning of 3 April she helped her son Chad get ready for school. Vanessa, Kelly (Mrs. Whitson's daughter) and the respondent were still asleep. After Chad left for school, Mrs. Whitson laid down on the couch, half asleep. She next heard water running and Vanessa crying. Mrs. Whitson testified that Vanessa's cry was not a hurting cry or a scream and that it came from the bathroom. Minutes later, Mrs. Whitson went down the hall to the bathroom. She saw washcloths in the tub, a towel on the back of the toilet and approximately six inches of water in the bathtub. The water was hot. Kelly and Vanessa were in Kelly's bedroom. Vanessa was crying. Mrs. Whitson woke the respondent up and together they took Vanessa to the hospital.

Mrs. Whitson's bedroom is adjacent to the bathroom. A wall of standard thickness separates Mrs. Whitson's bedroom from the

bathroom. The distance from the bed in which the respondent slept and the bathtub is approximately seven to ten feet.

On 6 April 1984, a social worker and a deputy sheriff went to the Whitson home and ran hot water into the bathtub to a depth of 6 inches. It took approximately six and a half minutes to reach that level. Upon reaching six inches depth, the temperature of the water was 136 degrees, cooling after five minutes to approximately 134 degrees. The tub was measured at fourteen-and-a-half inches tall and four-and-a-half inches thick. The noise of the water running into the bathtub could be heard plainly from Mrs. Whitson's bedroom through the bathroom wall.

*Stephen R. Little, for respondent-appellant.*

*Goldsmith and Goldsmith, by James W. Goldsmith, for petitioner-appellee.*

EAGLES, Judge.

I

[1] The respondent first assigns as error the trial judge's denial of respondent's motions to strike certain testimony of Dr. Rector. Respondent contends that on two occasions Dr. Rector's testimony was not responsive to the questions asked. We disagree.

On re-cross examination by respondent's attorney Dr. Rector was asked to describe the size of the burn on the child's buttock. Dr. Rector described the size as "irregular" and "easily covered by a napkin." He then testified that the type of burn he was referring to "could conceivably be consistent with somebody being lowered into the water and lifting up their feet to avoid thermal injury and the buttock being burned and then the response to the buttock being burned the feet would immediately extend instead."

The respondent contends that the first part of Dr. Rector's response to the question was appropriately responsive but that the additional testimony went beyond the scope of the question asked into matters not solicited by the question and contained testimony of pure conjecture and speculation.

Dr. Rector was also asked to give his opinion, based upon his observation of similar injuries, as to how long a splash mark

would remain on someone's leg or arm. Dr. Rector responded that he felt that water hot enough to deliver the depth of burn received by Vanessa would also leave first degree burns on the skin superficially where splash marks occurred. Dr. Rector then stated:

> I think it's very important to understand that this is a big time burn. This is incredible pain, this is nothing that this child is going to rationally think about. She's not going to get in this tub by whatever mechanism is postulated and say, hey, this is hot, I think I'm going to get out. The moment her foot hits that hot water — bam — every reflex in her body is to scramble out of that bathtub . . . as fast as humanly possible and therein lies why I feel the way I do. This . . . is a primitive reflex. A reflex that even new born babies have. It takes no intelligence or rational thought to remove yourself from hot water or hot anything. You touch a hot pipe, you recoil back, fast. This isn't something, well, how am I going to get out, what is the best mechanism to get out. She's not going to think about that, she's just going to scramble for everything she's worth. And while she's being burned she's going to churn the water something fierce.

Again, the respondent contends that Dr. Rector's testimony went beyond answering the question and that his response describing the reflex action was made without foundation and constituted broad generalizations.

> Whether an answer is responsive to a question is not the ultimate test on a motion to strike. If an unresponsive answer produces irrelevant facts, they may and should be stricken. . . . However, if the answers bring forth relevant facts, they are nonetheless admissible [although] they are not specifically asked for or go beyond the scope of the question.

State v. Ferguson, 280 N.C. 95, 98, 185 S.E. 2d 119, 122 (1971). If an answer states relevant and admissible evidence, it need not be stricken merely because it was not responsive to the question. State v. Morgan, 299 N.C. 191, 206, 261 S.E. 2d 827, 836, cert. denied, 446 U.S. 986 (1980).

The description of the manner in which the burns on the child's buttock could have been received was a relevant subject of

inquiry at the hearing. The answer given by Dr. Rector was in further explanation of his description of the size of the burn and why it was of such irregular shape and of lesser degree. Dr. Rector's description of the extreme pain caused by the burns and the normal reaction of a person exposed to such intense heat were also relevant subjects of inquiry at the hearing. These responses, while not within the scope of the questions asked, produced relevant facts and were within the expertise of the witness.

Accordingly, we hold that the trial judge did not err in denying respondent's motions to strike.

II

[2] The respondent next assigns as error the court's denial of respondent's motions to dismiss the petition made at the close of the petitioner's evidence and at the close of all the evidence. We find no error.

In a non-jury trial when a motion to dismiss pursuant to G.S. 1A-1, Rule 41(b) is made, the judge becomes both judge and jury. He must consider and weigh all competent evidence before him. He passes on the credibility of the witnesses and determines the weight to be accorded their testimony. *Dealer Specialties, Inc. v. Housing Services*, 305 N.C. 633, 640, 291 S.E. 2d 137, 141 (1982). He evaluates the evidence "without limitations as to the inferences which the court must indulge in favor of the plaintiff's evidence on a similar motion for a directed verdict in a jury case." *Bryant v. Kelly*, 10 N.C. App. 208, 213, 178 S.E. 2d 113, 116 (1970), *rev'd on other grounds*, 279 N.C. 123, 181 S.E. 2d 438 (1971).

We have examined the record and find that the trial court was correct and that petitioner's evidence was sufficient to overcome respondent's motion to dismiss at the close of the petitioner's evidence.

In a bench trial, there is little point to a motion to dismiss at the close of all the evidence, since at that point in trial the judge will decide the facts in any event. When the judge decides the case, either on a motion for dismissal or at the close of all the evidence, he must make findings of fact and separate conclusions of law. These findings aid the appellate courts in understanding the trial court's basis for its decision. *Helms v. Rea*, 282 N.C. 610, 619, 194 S.E. 2d 1, 7 (1973). Where the trial court as trier of fact

has found the facts specifically, these findings are conclusive on appeal if supported by competent evidence, even though there is evidence which could support a contrary finding. *Bryant v. Kelly, supra.*

The respondent presented evidence through testimony of both the respondent and Brenda Whitson that they were the only two adults in the house when the injuries occurred. Both witnesses maintained that Vanessa's injuries occurred while the respondent was asleep and while the children were playing together in the bathroom.

The trial judge, acting as trier of fact, weighing the competent evidence and passing on the credibility of the witnesses, found that Dr. Rector's testimony was credible and accepted his testimony in full. The trial judge also found that the injuries were intentionally inflicted and that the respondent inflicted them or allowed them to be inflicted on her child. Despite the respondent's evidence that the injuries to Vanessa were accidental, the record contains plenary evidence to support the trial court's findings. Since the trial court's findings are clearly supported by the evidence, they are binding on appeal.

### III

The respondent next assigns as error the denominating of certain points as findings of fact which the respondent contends are conclusions of law not supported by proper findings of fact or clear, cogent and convincing evidence. We find no error.

The respondent assigns as error the following findings of fact in the trial judge's order:

Finding 8(b). There were no splash marks on the child's body, indicating that there had been no splashing or thrashing in the water by the child when the burns were received.

Finding 8(c). Bath water hot enough to deliver the depth of burns observed upon Vanessa Ann Hughes would be hot enough to leave a first degree burn in areas where splash marks occurred, had there been any.

Finding 8(d). Second and third degree burns of the type received by Vanessa Ann Hughes would be extremely painful, and the normal reaction of a child would be try to remove

itself from the hot water, churning up the water in the process, and also to scream loudly.

Finding 8(g). Dr. Rector has had numerous experiences in caring for children who have received burns through both accidental and non-accidental means, and the reactions of the child, Vanessa Ann Hughes, to hospital personnel for the first ten to eleven days following her injuries were consistent with the behavior of a child who has received intentional burns, in that said child appeared to withdraw into a "shell."

Finding 8(h). The history given to Dr. Rector of how the child received the burns in an accidental manner was not consistent with the injuries observed as stated above.

Finding 16. The testimony of Athena Hughes and Brenda Whitson to the effect that the burns sustained by Vanessa Hughes occurred accidentally was not credible. By their "stocking" nature, the injuries could not reasonably have been caused accidentally either by the child herself, or with the assistance of Kelly Whitson, a child of similar height and weight. Further, it is not credible or believable that Vanessa Ann Hughes, after receiving burns of such a serious nature, would not have cried or screamed so loudly that her mother, the respondent, would be awakened in her adjoining room by either the screams or the loudly running water. Moreover, had these injuries been inflicted upon Vanessa Ann Hughes by Brenda Whitson, respondent would have known such injuries were being inflicted due to the screams of the child and Mrs. Hughes' close proximity to the place where the injuries were received; yet respondent denied any awareness of the injuries at the time they were inflicted.

Finding 17. The injuries received by Vanessa Ann Hughes on April 3, 1984, were intentionally inflicted upon her, and said injuries caused a substantial risk of disfigurement, impairment of physical health, and loss of function of a bodily organ, her skin, necessitating skin grafts.

Finding 18. Athena Hughes inflicted or allowed to be inflicted the burns received by Vanessa Ann Hughes on April 3, 1984.

On appeal when a trial court's order is reviewed as not being supported by the evidence, we look at the evidence to see if there

is clear, cogent and convincing competent evidence to support the findings. *In Re Allen*, 58 N.C. App. 322, 325, 293 S.E. 2d 607, 609 (1982). If there is competent evidence, the findings of the trial court are binding on appeal. *In Re Smith*, 56 N.C. App. 142, 149, 287 S.E. 2d 440, 444, *cert. denied*, 306 N.C. 385, 294 S.E. 2d 212 (1982). They are conclusive on appeal even though the evidence might support a finding to the contrary. *Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E. 2d 29, 33 (1968). The trial judge determines the weight to be given the testimony and the reasonable inferences to be drawn therefrom. If a different inference may be drawn from the evidence, he alone determines which inferences to draw and which to reject. *Knutton v. Cofield, supra.*

We have reviewed the record and we find that these findings are supported by ample clear, cogent and convincing evidence in the form of testimony from DSS social workers and the expert testimony of Dr. Rector. The evidence did raise conflicting inferences as to the cause of Vanessa's injuries. The trial judge weighed the conflicting inferences and determined that Vanessa's injuries were the result of non-accidental means and that the injuries were "intentionally inflicted upon her." By so finding, the judge rejected opposing inferences that the burns were received accidentally. Since the evidence supports the findings and the findings support the judgment, they are conclusive on appeal.

IV

The respondent's remaining two assignments of error were directed to the trial court's conclusions of law and the entry of the order. We find no error.

In the case at hand, the trial court based its order placing Vanessa Ann Hughes in the legal and physical custody of the Mc-Dowell County Department of Social Services on its conclusion, as a matter of law, that (1) on or about 3 April 1984 Vanessa Hughes was an abused juvenile as defined by G.S. 7A-517(1)(a); and (2) on or about 3 April 1984 Vanessa Hughes was a neglected juvenile who did not receive proper care from her parent, the respondent, Athena Hughes.

If the conclusion of law is supported by findings of fact based on clear, cogent and convincing evidence, the order appealed from should be affirmed. A "conclusion of law" is the court's statement

of the law which is determinative of the matter at issue between the parties. The conclusions of law necessary to be stated are the conclusions which under the facts found, are required by the law and from which the judgment is to result. *Montgomery v. Montgomery*, 32 N.C. App. 154, 157, 231 S.E. 2d 26, 29 (1977). Previously, we have discussed the findings of fact established by the record and have found that they are supported by clear, cogent and convincing evidence.

The respondent contends that removing Vanessa from the constant love and devotion of her mother is not in Vanessa's best interest. The respondent cites numerous occasions demonstrating that the respondent provided committed love and devotion for her daughter. Correctly, the respondent argues that the best interests of the child must be the "polar star" to guide the courts.

We note, however, "[t]he fact that a parent does provide love, affection and concern, although it may be relevant, should not be determinative, in that the court could still find the child to be neglected within the meaning of our neglect and termination statutes. . . . Therefore, the fact that the parent loves or is concerned about his child will not necessarily prevent the court from making a determination that the child is neglected." *In Re Montgomery*, 311 N.C. 101, 109, 316 S.E. 2d 246, 251-52 (1984).

For the reasons herein stated, the judgment of the trial court is

Affirmed.

Judges WHICHARD and JOHNSON concur.