An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-778

NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

IN THE MATTER OF:                          Wilkes County
                                           No. 10 JT 23
H.R.A.


    Appeal by respondent-father from order entered 3 May 2013 by Judge David V. Byrd in Wilkes County District Court. Heard in the Court of Appeals 7 January 2014.

> *No brief filed for petitioner-appellee Wilkes County Department of Social Services.*
>
> *Mark L. Hayes for respondent-appellant father.*
>
> *Louise M. Paglen for guardian ad litem.*


    DILLON, Judge.

    Respondent-father appeals from the trial court's order terminating his parental rights to H.R.A. We affirm.

    On 7 February 2011, the Wilkes County Department of Social Services ("DSS") obtained non-secure custody of H.R.A. and filed a juvenile petition alleging that H.R.A. was a neglected and

dependent juvenile. The petition alleged that H.R.A., who was nearly three years old at the time, and his mother were hospitalized after a car accident. H.R.A. appeared fine and was discharged two days later, but his mother had more extensive injuries. The mother did not know who would care for H.R.A. during her hospitalization. She claimed that she had a domestic violence protective order ("DVPO") against respondent-father, and his whereabouts were unknown. DSS was unable to find any other suitable placement for the child. Additionally, while the mother denied drug usage, she tested positive for marijuana and opiates following the accident.

In an order entered 15 April 2011, the trial court adjudicated H.R.A. neglected and dependent. In the order, the trial court made findings about the mother's car accident, history of mental health issues, and past treatment for substance abuse. The trial court also found that respondent-father had little contact with H.R.A. in the year prior to the accident, that he was subject to the DVPO until 2012, that he had an extensive criminal history, and that he failed one drug test since H.R.A. was placed in DSS custody. The trial court continued custody of H.R.A. with DSS.

On 4 October 2012, DSS filed a petition to terminate respondent-father's parental rights to H.R.A., alleging the following grounds for termination: (1) neglect; (2) failure to make reasonable progress; and (3) willful failure to pay a reasonable portion of the cost of care for the juvenile. *See* N.C. Gen. Stat. § 7B-1111(a)(1), (2), (3) (2011). The trial court conducted a termination of parental rights hearing on 2 April 2013. In an order entered 3 May 2013, the trial court found the existence of all three grounds for termination alleged by DSS. The trial court also concluded that it was in H.R.A.'s best interest to terminate respondent-father's parental rights.[1] Respondent-father gave timely, but deficient, notice of appeal, and he has therefore filed an alternative petition for writ of certiorari. In light of the fact that certiorari is available "when the right to prosecute an appeal has been lost by failure to take timely action," N.C.R. App. P. 21(a)(1), and in light of respondent-father's apparent desire to appeal the order, we hereby allow issuance of the writ.

Respondent-father challenges the trial court's grounds for termination of his parental rights. Pursuant to N.C. Gen. Stat. § 7B-1111(a), a trial court may terminate parental rights upon a

---

[1] The trial court also terminated the parental rights of H.R.A.'s mother, but she does not appeal.

finding of one of ten enumerated grounds. If this Court determines that the findings of fact support one ground for termination, we need not review the other challenged grounds. *In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003). We review the trial court's order to determine "whether the trial court's findings of fact were based on clear, cogent, and convincing evidence, and whether those findings of fact support a conclusion that parental termination should occur[.]" *In re Oghenekevebe*, 123 N.C. App. 434, 435-36, 473 S.E.2d 393, 395 (1996).

We conclude that the trial court's findings of fact are sufficient to support termination of respondent-father's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). Under this subsection, the trial court must find that the parent willfully left the juvenile in foster care for over twelve months, and the parent has not made reasonable progress to correct the conditions which led to the removal of the juvenile. *In re O.C.*, 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396, *disc. review denied*, 360 N.C. 64, 623 S.E.2d 587 (2005).

The following findings of fact address this ground for termination:

> 18. [Respondent-father] [] executed a
>     Family Service Case Plan. His Plan

required that he do the following:

A.  Provide answers to two (2) written questions concerning why his child was in foster care. He did this.

B.  Participate in individual or group therapy. He did not do this.

C.  Refrain from involving himself in domestically violent relationships. The Social Worker had no proof concerning this issue.

D.  Avoid violations of criminal laws and involvement with the criminal justice system. He did not do this. [Respondent-father] was incarcerated in the North Carolina Department of Correction from February, 2012 until August, 2012 as a result of violating his probation. [Respondent-father] had been convicted of habitual misdemeanor assault. He has been convicted of this at least twice. In December, 2011, [respondent-father] was charged and ultimately convicted of another assault charge and of communicating threats. This violated the terms of his probation and resulted in the active prison sentence referenced above.

E.  Take and complete parenting classes and use any skills learned during visits with [H.R.A.]. [Respondent-father] did attend and complete parenting classes. He also was appropriate in his interactions with [H.R.A.] during such visitation as he had. However, concerns persisted that [respondent-father] appeared at these visits smelling heavily of alcohol. However, he did not act intoxicated. In similar fashion, [respondent-father] appeared

before the undersigned on today's date smelling of alcohol. He was administered a breathalyzer test and registered .04. [Respondent-father] explained, and the Court finds, he had consumed 10 or 11 beers the night before.

F.  Have a substance abuse assessment and participate in any recommended counseling and treatment. He did have such an assessment. It was recommended that he take 40 to 60 hours of group follow up therapy. He did not do this. He has had no follow up treatment or care since his release from the Department of Correction nor has he attended any AA or NA meetings since his release.

G.  He was to participate in random drug screens as requested by [DSS]. He did not do this. [Respondent-father] was requested to take 17 drug screens. He took 6. He failed 2 of those. The last drug screen taken by [respondent-father] was September 21, 2012. He passed this screen. However, on November 2, 2012, [respondent-father] informed the Social Worker that she needn't call[] him any longer for drug screens because he was not going to be taking anymore.

H.  Participate in individual counseling for domestic violence perpetrators. He did not do this.

I.  Attend anger management classes. He did not do this, although he did take a "Father Accountability Program" while in prison. It is unclear how much, if any, of this program dealt with anger management.

J.   He was to present verification of any prescription medicines he was taking. He did this.

K.   Maintain weekly contact with the Social Worker. He did not do this. His last contact with the Social Worker was March 14, 2013 at an Agency Review. Prior to that, he last contacted the Social Worker [on] October 11, 2012.

L.   Notify the Social Worker of any changes in his contact information. He had no such changes, with the exception of being incarcerated.

M.   Maintain suitable housing. He has done this. He has lived in his current residence for several years.

N.   Maintain employment. Prior to his incarceration, [respondent-father] had worked for one company for approximately 22 years. However, he quit this job ostensibly so he would be available to take drug screens. During his incarceration, he had a job available to him working with the Department of Transportation. Although this would have been paid a small wage, it would have paid him a wage for virtually the entire time he was incarcerated. However, [respondent-father] quit that job and refused any work while in prison. [Respondent-father] testified that he did this so he could take the father accountability course or other self-help courses.

O.   Enter into a Voluntary Support Agreement and begin paying support for [H.R.A.]. He did not do this. Although [respondent-father] has been

employed or had the opportunity for employment at all times since [H.R.A.] has been in the care and custody of [DSS], [he] has paid no support for the child nor any portion of the cost of the child's care.

P. Have a mental health assessment and participate in any recommended counseling and treatment. Although he did have such an assessment[,] he did not complete the treatment recommended.

Additional findings demonstrate that H.R.A. was in foster care for the requisite period of time, but respondent-father does not dispute this fact.

Respondent-father specifically challenges finding of fact numbers 18(B), (C), (F), (G), and (I) as lacking in evidentiary support. The remaining findings of fact remain uncontested because respondent-father either (1) does not challenge them, or (2) purports to challenge them, but does not specifically argue that they are lacking in evidentiary support.[2] We therefore presume that the remaining findings of fact are supported by competent evidence, and consequently, they are binding on

---

[2] In his remaining purported challenges to the findings of fact, respondent-father argues that several findings do not support neglect. These challenges, however, actually amount to challenges to the conclusion that termination was justified based on neglect. Because we have found that termination of respondent-father's parental rights was justified pursuant to N.C. Gen. Stat. § 7B-1111(a)(2), we need not address these challenges and deem these findings to be supported by the evidence.

appeal. *See In re M.D.*, 200 N.C. App. 35, 43, 682 S.E.2d 780, 785 (2009). We address each challenged finding in turn.

Respondent-father first challenges the trial court's finding that he did not participate in individual or group therapy (Finding No. 18(B)). Respondent-father contends that he completed nearly all of his group and individual therapy and that his testimony on this issue was not contradicted. We disagree. Jessica Ashley, the social worker assigned to the case, testified that respondent-father attended therapy sporadically and completed only 10 to 12 hours. The evidence from the hearing shows that pursuant to respondent-father's assessment, he was required to complete 40 to 60 hours of therapy. Thus, there was evidence that he completed at most one-quarter of the required therapy, and we find this evidence sufficient to support the trial court's finding. Ms. Ashley's testimony may be contrary to respondent-father's, but it is not our duty to re-weigh the credibility of the witnesses and substitute our judgment for that of the trial court. *See In re Hughes*, 74 N.C. App. 751, 759, 330 S.E.2d 213, 218 (1985) ("The trial judge determines the weight to be given the testimony and the reasonable inferences to be drawn therefrom. If a different inference may be drawn from the evidence, he alone determines

which inferences to draw and which to reject.") (citation omitted).

Next, respondent-father takes exception to the finding that the social worker "had no proof" concerning whether respondent-father refrained from engaging in domestic violence (Finding No. 18.(C)). Respondent-father argues that this finding is not supported by the evidence and is speculative. This finding, however, is supported by Ms. Ashley's testimony that she was unaware of any incidents of domestic violence on the part of respondent-father. We also point out that this finding does not necessarily weigh against respondent-father or support DSS's case. Therefore, even if it is speculative, it does not prejudice respondent-father.

In the next challenged finding, the trial court found that respondent-father did not participate in the recommended 40 to 60 hours of therapy for substance abuse (Finding No. 18(F)). The evidence in support of finding number 18(B) also supports this finding. Respondent-father also appears to argue that the classes he took in prison should have counted towards his therapy. Ms. Ashley, however, testified that respondent-father never provided DSS with any curriculum or information regarding his participation in the prison classes. Without such

information, DSS was not in a position to determine whether respondent-father complied with the directives of his case plan. Thus, it was reasonable for the trial court to infer that respondent-father did not comply.

Next, respondent-father takes exception to the trial court's finding that he tested positive during two drug screens (Finding No. 18(G)). Respondent-father argues that he had prescriptions for the drugs which were found in his system and therefore did not fail the drug screens. Assuming *arguendo* that respondent-father is correct, he still failed to comply with the drug screening component of his case plan. Respondent-father took only 6 of 17 requested drug screens, and in November 2012, he explicitly refused to take any more. This evidence is sufficient to support the finding respondent-father did not comply with the requirement that he participate in random drug screening as requested by DSS.

Lastly, respondent-father challenges the finding that he did not attend anger management classes (Finding No. 18(I)). Respondent-father again argues that he fulfilled this requirement in prison. In support of his contention, respondent-father submits that he took a class called "Father Accountability." We first note that nothing in the title of

this class implies that it pertains to anger management. Additionally, Ms. Ashley testified that respondent-father never provided DSS with information regarding the program or proof that he completed it. Our analysis pertaining to Finding No. 18(F) also applies to this finding; and, therefore, we find support in the evidence for the trial court's finding that respondent-father failed to comply with this directive of his case plan.

Respondent-father also challenges the trial court's conclusion that he willfully left H.R.A. in foster care for more than twelve months without making reasonable progress to correct the conditions that led to H.R.A.'s removal. Respondent-father argues that he did not fail to make reasonable progress because (1) he had no part in the accident that led to H.R.A.'s removal, and (2) despite the fact that his case plan had no relation to the reason for H.R.A.'s removal, he nonetheless made significant progress on it.

We find respondent-father's arguments unavailing. It is well-established that, under N.C. Gen. Stat. § 7B-1111(a)(2), willfulness does not require a showing of fault by the parent. *Oghenekevebe*, 123 N.C. App. at 439, 473 S.E.2d at 398 (citation omitted). "A finding of willfulness is not precluded even if

the respondent has made some efforts to regain custody of the children." *In re Nolen*, 117 N.C. App. 693, 699, 453 S.E.2d 220, 224 (1995) (citation omitted).

Respondent-father is correct in his assertion that H.R.A. was originally placed in DSS custody, in part, due to the mother's auto accident. However, H.R.A. was also placed in DSS custody because there was no one else available to care for him, respondent-father's whereabouts were unknown, and he was subject to a DVPO. Respondent-father did little to demonstrate that he could provide a suitable home for H.R.A. The trial court found that respondent-father executed the case plan after H.R.A.'s adjudication of neglect and dependency, and DSS entered into a case plan with respondent-father for the purpose of aiding him in reunification with his son. While respondent-father made some progress on the directives contained in his case plan, his attempts to obtain custody of H.R.A. fell short of reasonable efforts.

Respondent-father also argues that he did not willfully leave H.R.A. in foster care. He claims that DSS would have rebuffed any attempt by him to remove H.R.A. from foster care, and therefore, to the extent that H.R.A. was "left" in foster care, it cannot be attributed to respondent-father. While we

agree that respondent-father would not have been permitted to remove H.R.A. from foster care, we disagree with the import of his argument. Again, we note that DSS entered into the case plan with respondent-father to aid in reunification with H.R.A. Respondent-father's willfulness is not measured by whether he could have actually removed H.R.A. from foster care, but whether he undertook the necessary actions to demonstrate that he could provide a suitable home for H.R.A. "Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort." *In re McMillon*, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175 (citing *Nolen*, 117 N.C. App. 693, 453 S.E.2d 220 (1995)), *disc. review denied*, 354 N.C. 218, 554 S.E.2d 341 (2001). Here, the findings of fact establish that respondent-father did not make reasonable progress. Based on the foregoing, we hold that the trial court did not err by concluding that termination of respondent-father's parental rights was justified pursuant to N.C. Gen. Stat. § 7B-1111(a)(2).

AFFIRMED.

Judges McGEE and McCULLOUGH concur.

Report per Rule 30(e).