An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e   P r o c e d u r e .

NO. COA13-862

NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

IN THE MATTER OF:

A.B., M.K., and I.C.

Cumberland County
Nos. 12 JA 491-93

Appeal by respondent from order entered 30 April 2013 by Judge Edward A. Pone in Cumberland County District Court. Heard in the Court of Appeals 13 January 2014.

> *Christopher L. Carr for petitioner-appellee Cumberland County Department of Social Services.*
>
> *Lane & Lane, PLLC, by Freddie Lane, Jr., for respondent-appellant.*
>
> *Beth A. Hall for guardian ad litem.*

STEELMAN, Judge.

A petition for a writ of *mandamus* is the proper remedy for a trial court's failure to comply with deadlines for proceedings under N.C. Gen. Stat. § Chapter 7B. Mother is not entitled to relief based on the trial court's failure to conduct an

adjudicatory hearing within 60 days from the filing of a juvenile petition or to enter an adjudicatory and dispositional order within 30 days of the hearing. The trial court determines the weight and credibility of evidence, and the appellate courts do not revisit these determinations on appeal. Where findings of fact, unchallenged on appeal, support the trial court's conclusions of law, the trial court did not err by concluding that the children were neglected, abused, and dependent. Mother's allegations that the trial court was biased are unsupported by the record. The trial court did not err by conducting the dispositional hearing immediately following adjudication.

## I. Factual and Procedural Background

C.T. (mother) is the mother of the minor children A.B., M.K., and I.C., born in 2011, 2010, and 2008. On 17 August 2012, a Sampson County DSS social worker informed Cumberland County DSS that another of mother's children, C.G., had reported during an interview that mother had "choked him until he passed out" and that she had a gun and had threatened to shoot him, A.B., M.K., I.C. and herself. On 21 August 2012 the Cumberland County DSS filed a petition alleging that the three children were abused, neglected, seriously neglected and dependent. The petition alleged that mother was mentally unstable, that the

children were frequently dirty and unkempt, and that mother had threatened "to get a gun and blow [the children's maternal grandmother's] brains out," had hit M.K. in the face with her fist, and had injured I.C.'s arm but did not take her to the doctor. On the same day DSS obtained non-secure custody of the juveniles.

The hearing was continued several times, partly in order to locate the minor children's three different fathers. At a hearing conducted in February 2013, testimony was elicited from mother, two of the children's fathers, their maternal grandmother, a maternal uncle, C.G., DSS social workers, a psychologist, and others. At the conclusion of the hearing, the trial court ruled that the children were abused, neglected, seriously neglected, and dependent. Following its adjudication, the trial court conducted a dispositional hearing. On 30 April 2013, the court entered an order concluding that the children were abused, neglected, seriously neglected, and dependent; continued custody with DSS; and directed DSS to pursue placement of the children with two of the fathers.[1]

Mother appeals.

[1] The trial court found Mr. C. and Mr. B. suitable to assume custody of their respective children. Mr. K. indicated that he was unable to provide a home for M.K., and would not object to an adoptive placement. Mr. B. expressed a desire to keep A.B. and M.K. together, and the court directed DSS to pursue this possibility.

## II. Compliance with Statutory Deadlines

Mother first argues that the trial court committed reversible error by failing to conduct an adjudicatory hearing within sixty days from the filing of the petition as required by N.C. Gen. Stat. § 7B-801(c) (2013), and by failing to enter its order of adjudication and disposition within thirty days of the hearing as required by N.C. Gen. Stat. § 7B-807(b) and 905(a). We disagree.

Pursuant to N.C. Gen. Stat. § 7B-801(c), the adjudicatory hearing shall be held "no later than 60 days from the filing of the petition unless the judge pursuant to G.S. 7B-803 orders that it be held at a later time." N.C. Gen. Stat. § 7B-801(c) (2013). In this case, the petition was filed on 21 August 2012, and the adjudicatory hearing began on 25 February 2013, more than sixty days later. However, N.C. Gen. Stat. § 7B-803 (2013) provides that the trial court "may, for good cause, continue the hearing for as long as is reasonably required to receive additional evidence, reports, or assessments that the court has requested, or other information needed in the best interests of the juvenile[.]" In this case the hearing was initially continued in order to locate the children's fathers. The case was also delayed until the related Sampson County matter involving C.G. had been resolved, and due to the difficulty of

calendaring a case that would require several days of trial time. Mother does not argue that any of the continuances were not for good cause, and we conclude that the trial court did not err by granting these continuances.

Further, our Supreme Court has held that "[in] cases such as the present one in which the trial court fails to adhere to statutory time lines, *mandamus* is an appropriate and more timely alternative than an appeal." *In re T.H.T.*, 362 N.C. 446, 455, 665 S.E.2d 54, 60 (2008). On appeal, mother "acknowledges that the Supreme Court has held that the proper remedy to address violation of the time requirements in these cases is a writ of *mandamus*" but argues that she is making "a good faith argument for extension or modification of existing law." However, this Court has no authority to reverse existing Supreme Court precedent, *see Rogerson v. Fitzpatrick*, 121 N.C. App. 728, 732, 468 S.E.2d 447, 450 (1996) ("It is elementary that this Court is bound by holdings of the Supreme Court [of North Carolina]") (citation omitted).

Moreover, we do not find mother's argument that she was prejudiced by the delayed hearing to be persuasive. The basis of this argument is not entirely clear, but appears to rest on mother's unsupported speculation that, if the adjudication hearing had been held sooner, then the court might have delayed

the dispositional hearing or scheduled the permanency planning hearing for a later date, and that as a result mother "would have had months" to "comply with reunification orders from the trial court." However, mother cites no evidentiary support for such speculation. In addition, the children were removed from mother's custody as a result of her physical and emotional abuse of the children and her failure to care for them properly, seek gainful employment, or maintain safe and stable housing for her family. Mother has not identified any changes in her conduct that she was in the process of making or actions that she needed more time to complete. We conclude that mother is not entitled to relief on the basis of the failure of the trial court to conduct an adjudicatory hearing within 60 days of issuance of the petition.

Mother makes a similar argument regarding the trial court's failure to enter its written adjudicatory and dispositional order within thirty days of the hearing, as required by N.C. Gen. Stat. § 7B-807(b) and N.C. Gen. Stat. § 7B-905(a). The adjudicatory and disposition hearings were completed on 28 February 2013 and a combined adjudicatory and disposition order entered on 30 April 2013, past the thirty day statutory deadline. However, we again note that the proper remedy for the

delay in entering the order was for mother to file a petition for writ of *mandamus*, rather than seek relief on appeal:

> [W]hen the trial court fails to enter an order of adjudication and disposition within thirty days after the adjudication and disposition hearing, a party should file a request with the clerk of court pursuant to N.C.G.S. § 7B-807(b) asking that the trial court enter its order or calendar a hearing "to determine and explain the reason for the delay." If the trial court refuses or neglects to enter the order or to calendar a hearing, or fails to enter its order within ten days following the 7B-807(b) hearing, a party may petition the Court of Appeals for a writ of *mandamus*.

*In re T.H.T.*, 362 N.C. at 456, 665 S.E.2d at 60-61.

Mother has not made any convincing argument that she was prejudiced as a result of the trial court's delayed entry of the adjudicatory and dispositional order. "The importance of timely resolution of cases involving the welfare of children cannot be overstated." *T.H.T.* at 450, 665 S.E.2d at 57. We urge the trial court to make every effort to adhere to the statutory deadlines. We conclude, however, that mother is not entitled to relief based upon the delay in entry of the order.

## II. Adjudication Order

Mother argues next that the trial court committed reversible error by adjudicating the juveniles abused, neglected and dependent "in the absence of clear, cogent and convincing evidence." This argument is without merit.

## A. Standard of Review

Mother challenges the trial court's adjudication of the minor children as neglected, abused, and dependent, terms that are defined in N.C. Gen. Stat. § 7B-101 in relevant part as follows:

> (1) Abused juveniles.- Any juvenile . . . whose parent . . . b. Creates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means; [or] c. Uses or allows to be used upon the juvenile cruel or grossly inappropriate procedures or . . . devices to modify behavior[.] . . .
>
> (9) Dependent juvenile.- A juvenile in need of assistance or placement because . . . (ii) the juvenile's parent . . . is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement.
>
> (15) Neglected juvenile. - A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, . . . or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare[.] . . .

N.C. Gen. Stat. § 7B-805 provides that the "allegations in a petition alleging that a juvenile is abused, neglected, or dependent shall be proved by clear and convincing evidence." In ruling on a juvenile petition, the "'trial judge determines the weight to be given the testimony and the reasonable inferences to be drawn therefrom. If a different inference may be drawn

from the evidence, he alone determines which inferences to draw and which to reject.'" *In re McCabe*, 157 N.C. App. 673, 679, 580 S.E.2d 69, 73 (2003) (quoting *In re Hughes*, 74 N.C. App. 751, 759, 330 S.E.2d 213, 218 (1985). On appeal:

> When this Court reviews an order in a juvenile abuse, neglect or dependency proceeding, we determine whether the trial court made proper findings of fact and conclusions of law in its adjudication and disposition orders. In so doing, we consider whether clear and convincing evidence in the record supports the findings and whether the findings support the trial court's conclusions. If there is evidence to support the trial court's findings of fact, they are deemed conclusive even though there may be evidence to support contrary findings.

*In re W.V.*, 204 N.C. App. 290, 293, 693 S.E.2d 383, 386 (2010) (citing *In re J.S.*, 182 N.C. App. 79, 86, 641 S.E.2d 395, 399 (2007), *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000) (internal citations omitted), and *In re Montgomery*, 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984). In conducting our review, "[f]indings of fact which are not challenged on appeal as lacking adequate evidentiary support are deemed supported by competent evidence and are binding for purposes of appellate review." *In re D.E.G.*, __ N.C. App. __, __, 747 S.E.2d 280, 283 (2013) (citing *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)).

## B. Analysis

On appeal, mother makes a generalized argument that the trial court's findings were not supported by clear and convincing evidence, but discusses only a few of the 73 adjudicatory findings made by the trial court. Mother essentially argues that the trial court erred by finding the testimony of C.G. to be credible and by failing to resolve evidentiary inconsistencies and discrepancies in favor of mother. However, it is the trial judge's duty to "weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." *In re Whisnant*, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984). "The trial court was entitled to find as it did, and it is not our duty to re-weigh the evidence and substitute our judgment for that of the trial court." *In re S.A.*, __ N.C. App. __, __, __ S.E.2d __, __ (2013 N.C. App. LEXIS 1340 *5) (citing *Hughes*). The trial court was free to reject mother's testimony and give credence to C.G.'s testimony.

Moreover, the trial court's unchallenged findings of fact support its conclusions that the juveniles were abused, neglected and dependent. These unchallenged facts include the following:

. . .

19. . . . [The] Respondent Mother has an often very volatile nature. The Respondent Mother often becomes frustrated with the juveniles, and yells and curses at them, as well as [at] adults in her family.

. . .

22. The Respondent Mother has a history of alcohol and substance abuse. The Respondent Mother has abused marijuana, Percocet, and Xanax. That at times, the Respondent Mother would drink to the point of total impairment, and would then direct her anger at others.

23. The Respondent Mother would become frustrated with the juveniles, and would hit them, including about the face and body. The Respondent Mother does this on a regular and frequent basis. The Respondent Mother calls the juveniles "bitches" and "motherfuckers." The Respondent Mother physically and verbally abuses the juveniles on a regular and frequent basis. The Respondent Mother threatened to kill all of the juveniles and then commit suicide.

24. The Respondent Mother met each of the Respondent Fathers on an internet social networking dating site, and within a short period of time, had moved in with them. The Respondent Mother led the Respondent Fathers . . . to believe that she could not have children[.] . . .

. . .

26. That [mother's brother,] Mr. Green, . . . would come home and find the juvenile [I.C.] in a urine soaked crib. That Mr. Green complained to the Respondent Mother, but to no avail. Mr. Green saw the Respondent Mother slap the juvenile [I.C.] in the face with such force that she knocked the juvenile to the floor[.] . . .

27. The Respondent Mother developed a pattern of behavior wherein she would leave the juveniles with others . . . for days at a time, without having any communication with them. . . .

28. . . . The Respondent Mother did not leave any documentation for the Maternal Grandmother or the Maternal Uncle to further care for the juveniles or to seek medical attention for the juveniles in the event of an emergency or if the juveniles became sick.

29. The Respondent Mother was evicted from one of her residences in part due to her loud behavior, including yelling and using abusive language towards the juveniles. . . . That Mr. Green observed the Respondent Mother to become angry and frustrated with the juveniles. He witnessed the Respondent Mother throwing the girls, particularly [A.B. and I.C.] onto the couch. That he also saw the Respondent Mother smack the juveniles around . . . [and] curse and yell at them while calling them names.

30. That during the latter part of 2011, [Mr. Green] came home and [I.C.] was crying. The juvenile told Mr. Green that "mommy hit me." That Mr. Green observed the juvenile's lip to be busted. That evidence of the same was presented to the Court via photograph . . . [which] shows a child, identified as [I.C.], with a busted lip. The Respondent Mother busted the juvenile's lip by hitting her in the mouth.

31. That during April 2012, Mr. Green came home again during one afternoon and the juvenile [I.C.] came up to him crying and sobbing . . . [and] said "mommy hit me." That Mr. Green observed the juvenile's eye to be bruised and swollen. The Court received evidence of the eye injury[.] . . .

Respondent Mother claimed that the eye injury was caused by a bee sting . . . [which was] not credible[.] . . . [The] Respondent Mother hitting the juvenile caused the injury.

32. . . . The Respondent Mother has lacked stability in housing and relationships . . . [and] has moved more than ten (10) times in the eighteen (18) to twenty-four (24) months prior to the filing of the verified Juvenile Petition. The Respondent Mother is currently unemployed and is residing in a place where the rent is paid by a Mr. Charles Thompson.

. . . .

35. The Respondent Mother frequently threatens the juveniles and adults. That on one occasion, she was angry with the Maternal Grandmother . . . [and threatened] to get a gun and blow the Maternal Grandmother's brains out. The Respondent Mother frequently makes such threats.

. . . .

48. That the Respondent Father [B.] . . . observed the Respondent Mother . . . [being] abusive to the juveniles. The Respondent Mother called the juveniles names in anger and frustration, such as "bitch" and "whore." . . . The Respondent Father [B.] saw the Respondent Mother toss the juveniles around and yell at them[.] . . .

. . .

55. . . . The maternal family is full of drinking, fighting, violent and threatening behavior; guns and alcohol are a part of the culture. . . .

. . .

57. The Respondent Mother created an abusive and injurious environment for the juveniles; that this was not a safe and nurturing environment. The Respondent Mother is unstable. The Respondent Mother's behavior and lifestyle is not conducive to child-rearing. She has acted inconsistently with her constitutionally protected status as a parent.

58. The juvenile [C.G.] is currently in the custody of the Sampson County [DSS]. . . . [C.G.] disclosed to [a DSS social worker] that the Respondent Mother had choked him to the point that he had lost consciousness. Additionally, the Respondent Mother had threatened to kill the juvenile, his siblings, and herself.

59. The juvenile [C.G.] testified in this matter. The Court had an opportunity to observe the juvenile closely. The juvenile was a truthful and credible witness[,who] . . . showed a level of maturity beyond his stated age[.] . . .

. . . .

65. The Respondent Mother injured the juvenile [I.C.'s] arm and failed to take the juvenile to the doctor, even after being prompted to do so by the Maternal Grandmother.

. . .

70. The Respondent Mother has acknowledged that she was not honest and truthful in her testimony [regarding] being seen with Mr. John Thompson during a recess in these proceedings. In short, the Respondent Mother admitted that she lied while under oath. . . . The Respondent Mother's relationship with Mr. Thompson . . . point[s] to a pattern of behavior by the Respondent Mother where men

are concerned . . . [and] points to her continued dependence on others[.] . . .

. . .

72. That the Respondent Fathers in this case were paying child support to the Respondent Mother in excess of $2,000.00 per month[, but] . . . Respondent Mother was unable or unwilling to obtain and maintain a stable residence for herself and the juveniles[.] . . . [O]ther than a brief stint at a Hooters' restaurant, the Respondent Mother has not obtained and maintained employment[,] . . . [and her] residence, utilities, school bills, and a monthly stipend of nearly $1,600.00 are being paid by the Thompson family.

. . .

74. . . . The only maternal relative that seems to be not violent and aggressive towards the juveniles is the Maternal Uncle, [Mr.] Green. The Respondent Mother, the Maternal Grandmother[, and other family members have] . . . engaged in acts of domestic violence in the presence of the juveniles. The maternal family has a culture of fussing, fighting, drinking, guns, drugs and violence. . . . The juveniles have witnessed this violence on a regular and frequent basis. . . .

75. There is a family culture of drugs, violence, physical and emotional abuse. . . .

76. The juveniles have been yelled at, tossed around, slapped, beaten, and verbally abused, practically from the day each of them were born. The environment is toxic, and is not conducive to child-rearing. The environment is highly injurious to the juveniles' mental, physical and emotional well-being.

. . . .

79.     There was not an appropriate
alternative child care plan at the time of
the filing of the verified Juvenile
Petition. . . .

. . . .

82. . . . [The] abuse and neglect are
chronic, and occurred over a substantial
period of time, following the birth of each
of these juveniles. . . .

We conclude that these unchallenged findings of fact support the conclusion that the juveniles were abused, neglected and dependent. *See* N.C. Gen. Stat. § 7B-101 (1), (9) and (15) (2013). "[S]ince we have not relied on those [findings] . . . that Respondent-Mother has challenged in examining the lawfulness of the trial court's [adjudication order] . . . we need not examine the validity of Respondent-Mother's challenges to these [findings.]" *In re T.B., C.P., & I.P.*, 203 N.C. App. 497, 503 n.2, 692 S.E.2d 182, 186 n.2 (2010) (citing *In re T.M.*, 180 N.C. App. 539, 638 S.E.2d 236, 240 (2006)). We conclude that the trial court's adjudication order was amply supported by its findings, and that the trial court did not err in its adjudication.

## IV. Dispositional Hearing

Mother next argues that the trial court ignored the basic purposes of the Juvenile Code by holding a dispositional hearing

immediately following its adjudication of abuse, neglect and dependency, and that the trial court evinced a "predisposition" to "deny fairness and equity, [and] to violate her constitutional rights[.]" This argument has no merit.

This argument consists primarily of mother's allegations of improper bias on the part of the trial court. For example, mother contends that the dispositional hearing was "a farce" because "the judge had determined that these juveniles would not be returned to their mother before the adjudication proceeding commenced," that the court's order "treads upon the rights of Respondent-Mother" and "the conduct of these proceedings by the court was simply an effort to rubberstamp the goals of Cumberland County DSS[.]" However, mother identifies no evidence beyond her self-serving and unsupported claims to sustain a conclusion that the trial court operated under any bias or predetermined the result of the adjudicatory and dispositional hearings. Instead, the evidence and accordant findings of fact established that mother abused and neglected the juveniles and they were dependent. Because mother fails to direct our attention to specific evidence of bias or misconduct by the trial court, we reject these arguments and, in addition, caution the counsel for mother to refrain from unsupported personal attacks on the trial court.

Mother also appears to argue that it was improper for the trial court to proceed to the dispositional hearing at the conclusion of the adjudicatory hearing. However, mother fails to acknowledge that N.C. Gen. Stat. § 7B-901 provides in relevant part that "[the] dispositional hearing shall take place immediately following the adjudicatory hearing[.]" Nor does mother articulate any specific prejudice arising from the fact that the court proceeded immediately to the dispositional phase of the proceedings, as directed by N.C. Gen. Stat. § 7B-901. For example, she does not argue that she was unable to produce a specific witness, or to complete a particular program as a result of the timing of the dispositional hearing. We conclude that mother is not entitled to relief on the basis of this argument.

For the reasons discussed above, we conclude that the trial court did not commit reversible error in its adjudication or disposition of this case and that its order is

AFFIRMED.

Judges HUNTER, Robert C., and BRYANT concur.

Report per Rule 30(e).